CITY OF PIERRE, Plaintiff, v. SIEWERT, et al, Defendants.

(261 N. W. 42.)

(Files Nos. 7832-33.   Opinion filed May 17, 1935.)

*E. W. Stephens* and *O'Keeffe & Stephens,* all of Pierre, for Plaintiff.

*Walter Conway,* Attorney General, and *Herman L. Bode* and *Benjamin D. Mintener,* Assistant Attorneys General, for Defendants.

*Miller & Shandorf,* of Mitchell, and *Sutherland & Payne,* of Pierre, for Intervenor.

PER CURIAM. Plaintiff city, a municipal corporation of the second class, alleging full compliance on its part with section 43, c. 134, Laws 1935 (Senate Bill 168 of the Twenty-Fourth Legislative Session, commonly referred to as "The Intoxicating Liquor Law"), instituted two original proceedings in this court for the purpose of requiring defendants to issue to plaintiff two separate licenses for the sale of intoxicating liquor at retail as contemplated by section 4 of the act. Case No. 7832 seeks to compel the issuance of a class C license, being an off sale or package dealer's license, and case No. 7833 seeks to compel the issuance of a class E, or on sale, license. Intervention was permitted in case No. 7832, and by stipulation of counsel in open court the same intervention is deemed made in case No. 7833.

The matters came on for oral argument before the court on May 4, 1935, and by the pleadings, arguments, and briefs of the parties there have been submitted to the court the following points in relation to chapter 134, Laws 1935. First, the validity and construction of section 43 of the act; second the validity of the act as a whole in view of its title; third, the validity of the emergency clause.

The cases present matters broad in scope, far reaching in effect, and of wide public importance and interest. Under the circumstances here involved, therefore, we think it may be helpful, and we deem it proper, to state the view of this court with reference to each of the controverted questions submitted.

We deem it important and expedient also that the opinion of this court be made known with the least possible delay. We have felt that it would be ill-advised to take the time necessary for the preparation of lengthy opinions containing a detailed discussion and exposition of the individual views of the members of the court upon all the various points involved. In the event any of the judges should decide within a reasonable time hereafter that he desires to write and file such an expression, leave so to do is hereby reserved. For these reasons, we think it proper to dispose of these cases by this per curiam opinion stating, without discussion or citation of the numerous authorities we have examined and

considered the ultimate conclusions at which a majority of this court has arrived with reference to the questions presented.

We therefore epitomize our opinion upon the questions argued and submitted as follows:

With reference to the first proposition, we think that section 43 of the act lies within the ambit of the title and sets up a valid and workable and sufficiently definite scheme for permitting a municipality to engage in retail liquor selling when the electors thereof have so voted. We think the state may lawfully authorize and empower a municipality to engage in such business. We think, in view of the act as a whole and other restrictions therein contained, that a municipality is entitled in such case to only one license and only one type of license. We think that such license may be either an off sale or on sale license, and that the governing body of the municipality (as is the case with any other applicant) may determine which type of license it will apply for (the electors not having voted against on sale licenses within the municipality as contemplated by section 46 of the act). We think it is mandatory upon the liquor control commission to recommend, and the state treasurer to issue, such license as applied for by the municipality. We think when the electors have voted for a license in the name of the city no other retail licenses, either off sale or on sale, are to issue in such municipality as long as the municipality continues in such business; and existing licenses for sale at retail in such municipality, if any, both off sale and on sale, terminate thirty days after the convass of the vote. As to whether a license may lawfully issue to a corporation representing the city, or whether a corporation can be a representative of the city in the matter in any respect, we express no opinion.

With reference to the second proposition, section 21, article 3, of the Constitution of this state, provides as follows: "No law shall embrace more than one subject, which shall be expressed in its title."

The title of chapter 134, Laws 1935, reads: "An Act Entitled, An Act Providing for the Manufacture, Sale and Distribution of Intoxicating Liquor, and For the Control and Supervision Thereof, and Repealing Existing Laws in Conflict Herewith, and Declaring an Emergency."

We think the subject of the act is provision for the manufacture, sale and distribution of intoxicating liquor and the control and supervision thereof. It is our opinion that the tax provided in Sections 7, 8, and 9 is a provision in accord with the general object of the act. It is a condition under which the sale and distribution of intoxicating liquors is permitted and, as such, comes within the object of the law, which object is to make provision for the manufacture, sale, and distribution of that which had heretofore been illegal. That the law is, perhaps, in the nature of a police regulation does not necessitate the exclusion of the tax feature. "The government has general authority to raise revenue and to choose the method of doing so; it has also general authority over the regulation of relative rights, privileges, and duties, and there is no rule of reason or policy in government which can require the legislature, when making laws with one object in view, to exclude carefully from its attention the other." Cooley on Taxation (4th Ed.) vol. 4, § 1784. In this connection, see State v. Morgan, 2 S. D. 32, 48 N. W. 314, 315, wherein it was held that imposing a gross earnings tax of 2 per cent upon commercial agencies was within the scope of the title, as follows: "An act to authorize and regulate within the state the business of commercial agencies, credit companies, and guaranty associations." As to whether or not there may be other isolated provisions of the act which are outside the scope of the title, we do not at this time express any opinion. We think that there is properly within the scope of the title a valid law, sufficiently complete and workable, repealing existing statutes prohibiting the manufacture, sale, and distribution of intoxicating liquor in this state, and setting up a scheme under which the manufacture, sale, and distribution of intoxicating liquor may be legal.

With reference to the third proposition, section 22 of article 3 of our Constitution provides: "No act shall take effect until ninety days after the adjournment of the session at which it is passed, unless in case of emergency, to be expressed in the preamble or body of the act, the legislature shall by a vote of two-thirds of all the members elected of each house, otherwise direct."

Section 1 of article 3 of the Constitution, as amended by the voters at the election of 1898, pursuant to chapter 39, Laws 1897, provides that any laws which the Legislature may have enacted

may be submitted to a referendum vote of the electors before going into effect "except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions." Construing these two sections of the Constitution together, it is the law of this state, often previously declared, that the expression of any emergency in the preamble or body of the law will not put such law into effect earlier than ninety days after the adjournment of the session at which it was passed (and thereby prevent or cut off the right to invoke the referendum upon it) unless such law in truth and in fact falls within the class of laws exempted from the invocation of the referendum by section 1 as amended; that is, unless it is a law "necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing institutions." The said chapter 134, Laws 1935, contains an emergency clause, as follows: "An emergency is hereby declared to exist and this Act is hereby found and declared to be necessary for the immediate support of the State Government and its existing institutions and for the immediate preservation of the public peace, health, and safety, necessitating immediate action and this Act shall be in full force and effect from and after its passage and approval."

We think this law in any event falls within the second clause of the exception provided in the Constitution. It is a law which, when viewed in the light of the declaration of necessity by the Legislature, must be held by this court as "necessary * * * for the support of the State Government and its existing public institutions." Whether incidental to the main object of the act or not, the law does in fact in sections 7, 8, and 9 (which we have held were within the subject of the act as expressed in the title) provide revenue, and the support of the state government is dependent upon revenue. The Legislature has declared this revenue immediately necessary for the support of the state government and its existing public institutions. There is nothing appearing upon the face of the law, nor facts within our judicial knowledge which will supersede this declaration of necessity made by the Legislature. Every reasonable presumption must be indulged in favor of the determination of the necessity made by the Legislature. State v. Morrison, 61 S. D. 344, 249 N. W. 563.

The revenue derived from the tax levy on intoxicating liquor is specifically allocated to the "general relief funds of the state of South Dakota." See section 42, c. 134, Laws 1935. While this language is, perhaps, inept, nevertheless it is sufficient in our opinion to evince an intention on behalf of the Legislature that the revenue derived under these provisions of the act, after deducting certain expenses provided for in the act, should accrue to and become a part of the "poor relief fund," created under the provisions of chapter 12, Laws of the Special Session of 1933, as amended by chapter 165, Laws 1935.

The city is applying in these two proceedings for two licenses, off sale and on sale. As above stated, we think the city is only entitled to one license, and that the governing body of the city has the right to choose what type of license it will have. The disposition of the two pending proceedings therefore will be this: The city is granted leave to dismiss without cost whichever of these proceedings it may elect; such dismissal to be filed with the clerk of this court within two days. When one of the proceedings is thus dismissed, peremptory writ will issue in the other as prayed without other or further order.

CAMPBELL, J. (dissenting). As did the majority of this court above, so do I here rest content with a statement of ultimate conclusions, refraining from taking the further time which would be required for the writing of an extended and detailed exposition with supporting argument and citation and discussion of pertinent cases.

Very probably the results which follow, as a practical matter, upon acceptance of the views of the majority may be more expedient and more salutary than would follow upon acceptance of my own. But I do not feel at liberty to decide upon that basis the questions of constitutional right here presented.

After protracted discussion and careful consideration of the opinions at which the other judges have now arrived, and with all due deference and respect thereto, my own convictions (be such convictions right or wrong) force me to dissent from their conclusions to the following extent and for the following reasons.

I am willing to assume for present purposes (though seriously doubting the validity of such assumption) that all provisions of chapter 134, Laws 1935 (and particularly sections 7, 8, and 9 im-

posing what is denominated an "excise tax"), are valid as being germane to and within the scope of the subject of the law as set forth in the title. I am further willing to assume for present purposes (though the validity of such assumptions is undoubtedly open to argument) that a majority of the people desire and would approve of such a law; that the state as a whole and the people of the state in general will be better off with it than without it; that it is wise and expedient as a matter of social policy; that it will make for improved conditions and promote the general welfare.

Nevertheless, and even in the light of such assumptions, I have been and am unable to compel my mind to the conclusion that this law is a law "necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions" within the contemplation of section 1 of article 3 of the Constitution of South Dakota. It follows that it is my opinion that the emergency clause in the law has no validity, that the law is not yet in effect, that any 5 per cent of the qualified electors of this state have a constitutional right to refer it to popular vote if they see fit, and that the writs sought should therefore be denied in both cases.

I am authorized to state that POLLEY, J., is also of this opinion.