BLACK *v.* LIQUOR CONTROL COMMISSION.

1. STATES—COMMODITIES—GOVERNMENTAL FUNCTION—POLICE POWER.
   The right of a State to go into the business of buying and selling
   commodities is not barred by the Federal Constitution, but the
   exercise of the right is not the performance of a governmental
   function, and must find its support in some authority apart
   from the police power.

2. INTOXICATING LIQUOR—CONTROL OF LIQUOR CONTROL COMMISSION.
   Except as limited or defined by statute, the Constitution itself
   vests the liquor control commission with plenary power to con-
   trol alcoholic beverage traffic in the State (Const. 1908, art. 16,
   § 11, as amended in 1932).

3. CONSTITUTIONAL LAW—PUBLIC POLICY—STATUTES.
   The propriety, wisdom, necessity, utility, and expediency of legis-
   lation are exclusively matters for legislative determination as
   the public policy of a State is to be found in its Constitution
   and statutes.

4. SAME—STATUTES—PUBLIC POLICY.
   The public policy of a State, when not fixed by the Constitution,
   is not unalterable but varies upon any given question with
   changing legislation thereon.

5. SAME—PUBLIC POLICY.
   The Supreme Court may not substitute the personal views and
   ideas of its members for the wisdom and policy of the legisla-
   ture as courts have nothing to do with such policy.

REFERENCES FOR POINTS IN HEADNOTES

[1] 42 Am. Jur., Public Funds, § 68.
[3–5] 11 Am. Jur., Constitutional Law, §§ 138, 139.
[7] 49 Am. Jur., States, § 28.
[9, 10] 30 Am. Jur., Intoxicating Liquors, §§ 219, 220.
[9, 10] Constitutionality of statutes providing for sale of intoxicat-
   ing liquor by a state or state agencies. 121 A.L.R. 300.
[13, 14] 30 Am. Jur., Intoxicating Liquors, § 220.

6. Same—Taxation—State Acquisition of Moneys.

The provision of the State Constitution requiring the legislature to provide for an annual tax to pay for the expenses of the State government does not prohibit the State from acquiring moneys through sources other than taxation (Const. 1908, art. 10, § 2).

7. Same—Legislative Power—Judicial Power.

All legislative power of the State is vested in the legislature and all judicial power of the State in the courts by the Constitution except as restricted by the same instrument.

8. Same—Taxation—Police Power.

The sovereign powers of taxation and of police may be mutually exerted and reside together in the same governmental agency.

9. Intoxicating Liquors—Revenues.

Whether the revenue derived from the conduct of the liquor business by the State, except as licensed by it to others, is net profit or taxes, such funds, however designated, may be properly acquired by the State as an incident to its exercise of the complete control of the alcoholic beverage traffic within this State (Const. 1908, art. 16, § 11, as amended in 1932).

10. Constitutional Law—Internal Improvements—Liquor Control Commission—Intoxicating Liquors.

Provision of Constitution prohibiting, with certain specific exceptions, the State's participation in works of internal improvement, is restricted in its scope and does not conflict with the provision vesting complete control of the alcoholic beverage traffic within this State in a liquor control commission to be established by the legislature (Const. 1908, art. 10, § 14; art. 16, § 11, as amended in 1932).

11. Same—Amendment—Intoxicating Liquors—Profit.

Since all political power is inherent in the people, they may adopt an amendment to the Constitution authorizing the State to engage in the liquor business for profit (Const. 1908, art. 16, § 11, as amended in 1932).

12. Intoxicating Liquors—Liquor Control Commission—Police Power.

The liquor control commission functions by reason of a direct mandate of the people and not alone by virtue of the police power of the State (Const. 1908, art. 16, § 11, as amended in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

13. SAME—LIQUOR CONTROL COMMISSION—LIQUOR BUSINESS.

Under amendment of the Constitution empowering legislature to vest complete control of the alcoholic beverage traffic in a liquor control commission, subject to statutory limitations, the legislature could validly authorize the commission to engage in the business of buying, selling and storing of liquor as complete control can only be exercised by one who enjoys unlimited freedom and scope of activity (Const. 1908, art. 16, § 11, as amended in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

14. CONSTITUTIONAL LAW—PUBLIC POLICY—COURTS.

The courts are not concerned with an expression of public policy as to control of alcoholic beverage traffic contained in a provision of the Constitution that has been adopted by a majority of the people, as against plaintiff's contention that there are certain iniquities in the business and that the State should not be in the liquor business because the State must be clean and honest (Const. 1908, art. 16, § 11, as amended in 1932).

15. COSTS—PUBLIC QUESTION—STATES—INJUNCTION—INTOXICATING LIQUORS.

No costs are allowed in suit to restrain State from in any way engaging in the intoxicating liquor business and traffic, a public question being involved (Const. 1908, art. 16, § 11, as amended in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

Appeal from Wayne; Ferguson (Frank B.), J. Submitted October 5, 1948. (Docket No. 6, Calendar No. 44,068.) Decided December 17, 1948.

Bill by Thomas E. H. Black and others against Liquor Control Commission of the State of Michigan to restrain Liquor Control Commission from operating as buyer, owner, seller or vendor of intoxicating liquors. Decree for defendant. Plaintiff appeals. Affirmed.

*Thomas E. H. Black,* for plaintiffs.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Ben H. Cole,* Assistant Attorney General, for defendant.

BUSHNELL, C. J.   At the November election in 1932, the people adopted a constitutional amendment (Const. 1908, art. 16, § 11), which reads:

"The legislature may by law establish a liquor control commission, who, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this State, including the retail sales thereof; and the legislature may also provide for an excise tax on such ꞌsales; Providing, however, that neither the legislature nor such commission may authorize the manufacture or sale of alcoholic beverages in any county in which the electors thereof, by a majority vote, shall prohibit the same."

Following the adoption of this amendment the legislature created "a liquor control commission for the control of the alcoholic beverage traffic within this State," and prescribed "its powers, duties and limitations," et cetera.   Act No. 8, Pub. Acts 1933 (Ex. Sess.), as amended (Comp. Laws Supp. 1940, § 9209-16 *et seq.,* Stat. Ann. § 18.971 *et seq.*).   The legislature by this act, among other things, provided that the commission might "establish State liquor stores throughout the State of Michigan" (Section 13 [Comp. Laws Supp. 1935, § 9209-28, Stat. Ann. § 18.984]), where liquor could be sold, and directed the commission in section 16 (Comp. Laws Supp. 1935, § 9209-31, Stat. Ann. § 18.987) to establish uniform prices, fixing the maximum gross profit on sales at 40 per cent., since increased by amendment to not exceed 65 per cent.   See Act No. 281, Pub. Acts 1937; Act No. 133, Pub. Acts 1945; and Act No. 349, Pub. Acts 1947.

The defendant liquor control commission of the State of Michigan, according to stipulation of counsel, "adopted various rules, resolutions, regulations, forms and interrelated business plans and systems of commercial business, by which it became a dealer, buyer and seller, owner, titleholder, vendor and possessor of large and sundry kinds, classes and brands of alcoholic and intoxicating liquors and beverages for the purpose of sale, through its own branches and stores and to and through distributors, private retailers and dealers throughout the State of Michigan, and for the sale by itself, in the original packages to the public from its own various established State stores, maintained and operated in various parts of Michigan, returning a net revenue over all expenses to the State of Michigan."

It operates branch offices and stores, licenses various "hotels and established merchants," buys and stores in warehouses stocks of liquor, leases premises, and generally conducts a going liquor business to the exclusion of everyone else in the State of Michigan, except those licensed by it.

By legislative enactment (section 10, as amended by Act No. 241, Pub. Acts 1935 [Comp. Laws Supp. 1940, § 9209-25, Stat. Ann. § 18.981]) the commission is provided with a revolving fund of working capital for the conduct of the business, and it contracts for and purchases large stocks of intoxicating liquors and carries on merchandising operations as the sole and exclusive wholesale seller and vendor of such liquors in the State of Michigan. After some years of operation, this revolving fund on deposit with the State treasurer on June 30, 1945, according to stipulation of counsel, had attained a total of over $4,000,000, and the total revenue for the fiscal year ending that date was over $28,000,000; the commission then operating 108 stores in the State.

On December 20, 1944, plaintiff Thomas E. H. Black, who was later joined by other parties plaintiff, filed a bill of complaint in the Wayne circuit court in which he charged, as amended later, that the defendant liquor control commission, by reason of a violation of other provisions of the State Constitution, hereinafter discussed, was illegally, and contrary to sound public policy, public interest and welfare, operating such business, and he prayed that the defendant commission be permanently restrained and enjoined from "in any way operating and functioning as a buyer, owner, seller and vendor of intoxicating alcoholic liquors and from in any way engaging in the intoxicating alcoholic liquor business and traffic as a vendor or dealer in the sale of intoxicating alcoholic liquors in the State of Michigan."

After hearing proofs and considering certain stipulated facts, the trial court filed an opinion and entered a decree dismissing plaintiffs' amended bill of complaint. In reaching his conclusion the trial judge discussed attacks on similar legislation and operations in other jurisdictions and the decisions of courts of last resort in respect thereto, pointing out that statutes providing for the sale of intoxicating liquors by States and State agencies were held to be within constitutional limitations in South Carolina, Alabama, Montana, Pennsylvania, South Dakota, Utah, and Washington.

He also quoted from *Ohio* v. *Helvering,* 292 U. S. 360, 369 (54 Sup. Ct. 725, 78 L. Ed. 1307), where the court said as follows:

"If the State chooses to go into the business of buying and selling commodities, its right to do so may be conceded so far as the Federal Constitution is concerned; but the exercise of the right is not the performance of a governmental function, and must

find its support in some authority apart from the police power."

He also quoted from *Terre Haute Brewing Co., Inc.,* v. *Liquor Control Commission,* 291 Mich. 73, as follows:

"Except as limited or defined by statute, the Constitution itself vests the statutory commission with plenary power to control alcoholic beverage traffic in this State.    *    *    *

"The constitutional provision that the commission 'shall exercise complete control of all alcoholic beverage traffic within this State, including the retail sales thereof,' is limited only by express provisions or necessary implications embodied in the legislative act (as amended) by which the commission was created and its powers, duties and limitations prescribed."

With respect to public policy he cited *Rohan* v. *Detroit Racing Association,* 314 Mich. 326, 347, 348 (166 A. L. R. 1246) from which we quote the following excerpts:

"The propriety, wisdom, necessity, utility, and expediency of legislation are exclusively matters for legislative determination.    *    *    *    The public policy of a State is to be found in its Constitution and statutes.    *    *    *

"The public policy of a State, when not fixed by the Constitution, is not unalterable but varies upon any given question with changing legislation thereon.    *    *    *

"The court may not substitute the personal views and ideas of its members for the wisdom and policy of the legislature.  Courts have nothing to do with the policy of legislation."

Although it might be sufficient for us to point out that plaintiffs' arguments might more properly be addressed to the legislature, it having been directly charged by the people with the responsibility of imposing limitations upon the commission's complete

control of the liquor traffic, we nevertheless discuss the several questions raised on appeal. Before doing so, however, we reiterate that, in the absence of statutory limitations, we adhere to the principle of plenary power as expressed in the *Terre Haute Case.*

Section 2 of article 10 (Const. 1908), reads:

"The legislature shall provide by law for an annual tax sufficient with other resources to pay the estimated expenses of the State government, the interest on any State debt and such deficiency as may occur in the resources."

Appellants argue that under this provision the legislature "may provide for a tax, but it cannot provide or enact laws to earn net revenues or profits in a commercial conduct of the liquor traffic."

The section in question does not prohibit the State from acquiring moneys through sources other than taxation.

"While the legislature obtains legislative power and the courts receive judicial power by grant in the State Constitution, the whole of such power reposing in the sovereignty is granted to those bodies except as it may be restricted in the same instrument." *Washington-Detroit Theatre Co.* v. *Moore,* 249 Mich. 673, 680 (68 A. L. R. 105).

Nor do we find any such limitation elsewhere in the State Constitution.

The early case of *Reithmiller* v. *People,* 44 Mich. 280, 285, regarding the closing of saloons on legal holidays, Sundays and election days, is authority for the general proposition that the sovereign powers of taxation and of police may be mutually exerted, and that these powers reside together and are capable of harmonious employment to effect the ends of good government. The Court further said:

"Where the object will admit the co-operation of their energies without multifariousness, there is no objection. Even a single measure may be indebted to both without infringing the Constitution."

See, also, *State* v. *Driscoll,* 101 Mont. 348 (54 Pac. [2d] 571) ; *Commonwealth* v. *Stofchek,* 322 Pa. 513 (185 Atl. 840) ; and *City of Pierre* v. *Siewert,* 63 S. D. 485 (261 N. W. 42).

The South Dakota court in the *Pierre Case, supra,* quoted with approval 4 Cooley on Taxation (4th Ed.), § 1784, as follows:

"The government has general authority to raise a revenue and to choose the method of doing so ; it has also general authority over the regulation of relative rights, privileges, and duties, and there is no rule of reason or policy in government which can require the legislature, when making laws with one object in view, to exclude carefully from its attention the other."

We conclude therefore that, whether the revenue in question is net profit, as claimed by the plaintiffs, or taxes, such funds, however designated, may be properly acquired by the State as an incident of the exercise of the "complete control of the alcoholic beverage traffic within this State."

Section 14, article 10,* reading:

"The State shall not be a party to, nor be interested in any work of internal improvement, nor engage in carrying on any such work, except in the improvement of, or aiding in the improvement of the public wagon roads, in the reforestation and protection of lands owned by the State and in the expenditure of grants to the State of land or other property,"

---

* This section was amended in 1945 and 1946. See Pub. Acts 1945, p. 647 and Pub. Acts 1947, p. 734.—REPORTER.

is restricted in its scope, as indicated by many decisions appertaining thereto, and does not conflict with the amendment (article 16, § 11) in question. All political power is inherent in the people, who could and did adopt a constitutional amendment authorizing the State to engage in the liquor business for profit. The legislature enacted a law pursuant to such directive, and the commission, under such law, functions by reason of a direct mandate of the people, and not alone by virtue of the police power of the State. See discussion of this subject in *State, ex rel. Wilkinson,* v. *Murphy,* 237 Ala. 332 (186 South. 487, 121 A. L. R. 283), and authorities annotated in 121 A. L. R. 300 *et seq.*

Appellants further argue that the legislative provisions regarding control of the liquor traffic and the commission's actions pursuant thereto are in violation of section 11 of article 16, in that the language of the amendment does not and cannot mean that the State may engage in the liquor business. Arguments of policy are also advanced, as are various definitions of the word "control" which plaintiffs say connotes only the power to regulate and govern and excludes any authorization to engage in the liquor business. The weakness of this argument is that the constitutional language is not so narrow as suggested, and is not restricted to mere "control," but authorizes the legislature to establish a commission which *shall,* in the absence of statutory limitations, exercise *complete* control. Complete control can only be exercised by one who enjoys unlimited freedom and scope of activity. Therefore, we must hold that such control carries with it the power, unless limited by specific legislation, to engage in the business of buying, selling, storing, et cetera, of liquor.

Certain arguments regarding the iniquities of the business are made, and the Court is urged to hold

that the "State must be clean," because we said in *Hilt* v. *Weber,* 252 Mich. 198, 224 (71 A. L. R. 1238), that the "State must be honest."

Section 11, article 16, is an expression by the people of the public policy of this State as to the matters to which it relates. It is a statement of the will of the majority of the people who voted for its adoption. With that policy the courts are not concerned.

The decree of the trial court is affirmed, but without costs, a public question being involved.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.