BESOZZI *v.* THE INDIANA EMPLOYMENT SECURITY
BOARD ET AL.

[No. 18,909. Filed March 4, 1957. Rehearing denied April 5,
1957. Transfer denied November 14, 1957.]

*Theodore M. Gemberling, Owen W. Crumpacker* and *Crumpacker, Gemberling & Enslen* (of counsel), of Hammond, for appellant.

*Edwin K. Steers,* Attorney General, *William S. McMaster* and *Keith Campbell,* Deputy Attorneys General, for the appellees.

ON PETITION TO TRANSFER

ACHOR, J.—This case is before us on petition to transfer, under Rule 2-23.

Appellant employer filed a claim for refund of contributions with the Indiana Employment Security Division, claiming that he was not subject to the provisions of the Employment Security Act (Acts 1947, ch. 208, §§101, etc. (being §§52-1525, etc., Burns' 1951 Repl.). Under the act employers are subject to the act if they employ eight or more employees. Appellant employed two full-time employees. He also employed six part-time employees who were working full time for other employers. Appellant contends that these six part-time employees should not be included in determining his liability under the act.

It is asserted by appellant, as cause for transfer to this court, that the Appellate Court failed to discuss and decide the basic question raised by appellant in this appeal, namely, whether the "imposition of the employment security tax in this case is an abuse of the police power of the state and hence contrary to law." An examination of the Appellate Court opinion discloses that said court did not discuss or decide said issue and, for that purpose, examine the record and briefs in the same manner and to the same extent as if they had been brought under a writ of error.[1]

Also, as cause for transfer, appellant contends that the Appellate Court opinion contravenes certain ruling precedents of this court and that it erroneously decided certain new questions of law. These issues are dependent upon the above basic question which the Appellate Court failed to discuss and decide and will, therefore, be considered conjunctively.

Appellant contends that the act is reasonably susceptible to two constructions: that under one the act would be constitutional and appellant would not be liable to the tax; that under the other construction, under which appellant would be subject to the tax, the act would constitute an invalid exercise of the police power and therefore would be unconstitutional.

---

1. "The Constitution requires that: 'The Supreme Court shall, upon the decision of every case, give a statement in writing of each question arising in the record of such case, and the decision of the Court thereon' (Article 7, §5). This mandate is likewise binding on the Appellate Court of Indiana. *Hunter* v. *Cleveland, etc., R. Co.* (1930), 202 Ind. 328, 174 N. E. 287. . . . When a proper showing is made in and as a part of the petition to transfer that the Appellate Court has failed to consider and pass upon a substantial question duly presented to it, this court will examine the record, papers, and briefs in the same manner and to the same extent as if these had been brought up by a writ of error. . . ." *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 113, 114, 26 N. E. 2d 399.

Further, appellant reasons that the act should be construed in such a manner as to sustain its constitutionality. The net result of this reasoning would be that appellant would not be subject to the tax. Specifically appellant relies upon the fact that the declared purpose of the act is to provide benefits for the unemployed during periods of unemployment and to encourage desirable, stable employment and is, by its express terms, "declared to be a proper exercise of the police powers of the state." §52-1525, *supra.*

First, appellant argues that a construction of the act which would impose an assessment upon him and other employers in his position would discourage rather than encourage employment and thus defeat the express purpose of the act. Such employers, he reasons, would refuse to employ part time help because such employment would bring them within the scope of the act. However, as against this argument, it is also true that if employers were permitted to avoid payment of the tax by employing persons who were otherwise fully employed, the effect would be to encourage the dual employment of the already employed to the detriment of the unemployed. Such a practice would clearly tend to defeat the purpose of the act, which is to alleviate the hardships of unemployment. The above rationalization merely serves to demonstrate the fact that appellant's argument is related to a question of public policy, which falls within the province of the legislature. Under these circumstances the wisdom of the law cannot be used as the basis of its judicial construction.

Secondly, appellant asserts that since the act by express declaration is an exercise of the police powers of the state, it cannot be used for the raising of revenue.

16 C. J. S., §174, Constitutional Law, pp. 890-91. *Dept. of Treasury* v. *Midwest Liquor Dealers* (1943), 113 Ind. App. 569, 48 N. E. 2d 71; *City of Terre Haute* v. *Kersey et al.* (1902), 159 Ind. 300, 64 N. E. 469. And finally, appellant contends that the assessment of contributions against him, by reason of his employment of part-time employees who were elsewhere fully employed and could receive no benefit from the assessment, constituted a tax for revenue purposes as distinguished from the authorized exercise of police powers of the state to police or regulate for the public welfare. Therefore, appellant concludes that the assessment of the tax upon appellant is unlawful because it is in conflict with the declared purpose of the act, which is to accumulate funds and provide benefits to the unemployed through the "exercise of the police powers of the state." §52-1525, *supra.*

The pertinent part of the controlling sections of the act, upon which appellant relies, provides as follows:

"ARTICLE I.  DECLARATION OF PUBLIC POLICY

"As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, morale and welfare of the people of this state and to the maintenance of public order within this state. Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment. The enactment of this measure to provide for payment of benefits to persons unemployed through no fault of their own, to encourage stabilization in employment, and to provide for a state employment service is, therefore, essential to public wel-

fare; and the same is declared to be a proper exercise of the police powers of the state." §52-1525, *supra.*

"ARTICLE VII. EMPLOYERS

" 'Employer' means any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty (20) different weeks, whether or not such weeks are or were consecutive within either the current or the preceding calendar year, has or had in employment, and/or has incurred liability for wages payable to eight (8) or more individuals (irrespective of whether the same individuals are or were employed in each such day), and for the purposes of this definition if any week includes both December 31 and January 1, the days up to January 1 shall be deemed one (1) calendar week and the days beginning January 1 another such week." Acts 1947, ch. 208, §701, p. 673 (§52-1531, Burns' 1951 Repl.).

At the outset, it is important that the declaration of the legislature, that the enactment is ". . . a proper exercise of the police powers of the state," be considered in its proper significance. The statement is contained in the "Declaration of Public Policy" or preamble of the act (§52-1525). Such a legislative declaration can, in no sense, be considered a judicial determination of the action authorized by the act. The question as to whether the operational effect of a statute falls within any or some particular constitutional authority must finally rest with the judiciary.[2] Such a declaration, if proper for any purpose, could only be considered for the purpose of determining the intention of the legislature, for the purpose of construing the act. See: *Townsend* v. *State* (1897), 147 Ind. 624, 47 N. E. 19.

The question remaining then is, what significance

2. 16 C. J. S., §112, p. 501.

shall be given to the legislative declaration that the act is "a proper exercise of the police powers ■ of the state"? The well established rule upon this question is that a declaration of public policy, stated as the preamble of an act, is not controlling of the operation of the act itself, unless there is ambiguity in the act which makes it susceptible to construction. Upon this issue this court, in the case of *State* v. *Ohio Oil Company* (1897), 150 Ind. 21, 32-33, 49 N. E. 809, stated the law upon this issue as follows:

". . . It is not infrequent for the legislature, in the preamble to a statute, to recite a particular mischief, while the legislative provisions extend far beyond the mischief recited. The evil recited is but the motive for legislation, the remedy may both consistently and wisely be extended beyond the cure of that evil; and if, on review of the whole act, a wider intention than that expressed in the preamble appears to be the real one, effect is to be given to it, notwithstanding the less extensive import of the preamble. . . . *In Yazoo, etc. R. R. Co.* v. *Thomas, supra,* (132 U. S. 174) the Supreme Court of the United States said: 'The preamble to the act is referred to by counsel, as sustaining their construction, because it is therein declared that the work is one of "great public importance," . . . 'But as the preamble is no part of the act, and cannot enlarge or confer powers nor control the words of the act, *unless they are doubtful or ambiguous,* the necessity of resorting to it to assist in ascertaining the true intent and meaning of the legislature is in itself fatal to the claim set up.' . . ."

We find no ambiguity in the act now under consideration with regard to the provision that part-time employees are included within its operation. The ■■ statute clearly defines an employer as an employing unit which engages eight or more individuals who work ". . . for some portion of a day,

. . . in each of twenty (20) different weeks, . . ." in a year. §52-1531, *supra*. This provision clearly includes part-time employees who work the required period of time. Therefore, we conclude that there is no merit to appellant's contention that the act is subject to a construction which would exclude appellant's part-time employees who were otherwise fully employed, and would, therefore, exclude appellant as an employer from its operation. We further conclude that the declaration in the preamble of the act, that it constitutes "a proper exercise of the police powers of the state," (§52-1525, *supra*) is not controlling of the character of the action enacted by the statute. Rather, the character and validity of the action must be determined by the operational effect of the act itself.

Appellant's position then is that, based upon the operation of the act thus construed, the assessment upon appellant, made without regard to the benefits received by his particular employees, is an invalid exercise of the police power of the state. This presents us with two final questions: (1) Whether the power exercised by the act is, in fact, the police power or the taxing power of the state, and, if not an exercise of the police power, (2) whether the assessment is valid under the taxing authority of the state. In resolving these questions, we are guided by the fact, as stated by reputable authority, that, ". . . The taxing power is exercised for the purpose of raising revenue . . . while the police power is exercised only for the purpose of promoting the public welfare, and, although this end may be attained by taxing or licensing occupations, yet the object must always be regulation and not the raising of revenue, . . ." 16 C. J. S., §174, pp. 890-891. Therefore, although the sovereign powers of taxation

and police are constant and may be mutually exerted,[3] where the primary purpose is regulation and not revenue, there is an exercise of the police power, rather than the taxing power,[4] the raising of revenue rather than regulation, there is an exercise of the taxing power of the state. Here the primary purpose and effect of the act is not to regulate employment, but to protect society against economic insecurity due to unemployment ". . . by the required and *systematic accumulation of funds* during periods of employment to provide benefits to the unemployed . . ." §52-1525, *supra*. (Our italics.) Thus the primary purpose of the act is the accumulation and distribution of funds, and not to police or regulate employment. Therefore, in function the act is primarily the exercise of the taxing authority rather than the police powers of the state, notwithstanding the statement to the contrary contained in the preamble of the act.

The law is now well settled that a tax for the purpose of alleviating unemployment is exerted for a proper public purpose.[5] The rule is also well settled that, in the exercise of the taxing authority of the state, there need be no direct relationship between the subjects and benefits of a tax in order that the tax be constitutional, if levied for a proper public purpose. The principle with which we are here concerned was presented to the Supreme Court of the United States in the case of *Carmichael* v.

---

3. *Black* v. *Liquor Control Commission* (1948), 323 Mich. 290, 35 N. W. 2d 269.

4. *Dept. of Treasury* v. *Midwest Liquor Dealers* (1943), 113 Ind. App. 569, 48 N. E. 2d 71.

5. *Standard Dredging Corporation* v. *Murphy* (1943), N. Y., 63 S. Ct. 1067, 319 U. S. 306, 87 L. Ed. 1416; *Pickelsimer* v. *Pratt* (1941), 198 S. C. 225, 17 S. E. 2d 524; *State ex rel. Hamilton* v. *Martin* (1933), 173 Wash. 249, 23 P. 2d 1.

*Southern Coal & Coke Co.* (1937), 301 U. S. 495, 81 L. Ed. 1245, 57 S. Ct. 868. In that case, which involved the constitutionality of the Alabama Unemployment Compensation Act, the court stated:

> "It is not a valid objection to the present tax, conforming in other respects to the Fourteenth Amendment, and devoted to a public purpose, that the benefits paid and the persons to whom they are paid are unrelated to the persons taxed and the amount of the tax which they pay—in short, that those who pay the tax may not have contributed to the unemployment and may not be benefited by the expenditure. . . ."

We conclude therefore that, although the issues presented by the appellant in his petition to transfer were not discussed and decided by the Appellate Court, appellant's contentions regarding such issues are without merit. The Appellate Court has reached the right result under the facts and issues presented by its opinion. Under the circumstances no good purpose would be served by accepting transfer to this court.

Petition to transfer is therefore denied.

Arterburn, C. J., Bobbitt, Emmert and Landis, JJ., concur.

NOTE.—Reported in 146 N. E. 2d 100.