## TOWNSHIP OF LANSING *v.* CITY OF LANSING.

1. MUNICIPAL CORPORATIONS—FRANCHISES—WATER SYSTEM—METROPOLITAN DISTRICT—TOWNSHIPS.

A charter for a metropolitan district which embraced territory in plaintiff and another township, including an area in which plaintiff township itself had previously established a water system under a lawful franchise for use of its own public streets, but which charter did not itself or the resolution approving it, refer to a franchise nor the power to use the streets and alleys, did not grant a franchise to the metropolitan district to use the streets and alleys in such area where township had previously established a water system in the absence of a surrender of the franchise by the voters (Const 1908, art 8, §§ 28, 31; CL 1948, § 119.2).

2. SAME — METROPOLITAN DISTRICT — CHARTER — USE OF PUBLIC STREETS.

The mere approval of a charter of a metropolitan district simply gives it the power to exist for the purposes outlined in the charter and does not include the power to function by the use of public streets and alleys for the purpose for which the district was organized (Const 1908, art 8, §§ 28, 31).

3. FRANCHISES—DEFINITION.

A franchise is a special privilege of a public nature conferred by a governmental authority upon an individual or corporation and which did not belong to the recipients generally as a matter of common right.

4. CORPORATIONS—ORGANIZATION—RIGHT TO CONDUCT BUSINESS.

The charter rights and privileges of a corporation are such only as are derived by virtue of its organization under legislative enactment and do not include the right to conduct business.

REFERENCES FOR POINTS IN HEADNOTES

[3] 23 Am Jur, Franchises § 2.
[4] 37 Am Jur, Municipal Corporations § 79.
[5] 38 Am Jur, Municipal Corporations § 545 *et seq.*
[9] 19 Am Jur, Estoppel §§ 2, 48.

5. FRANCHISES—PROPERTY.

  The right to use the public streets for a public utility purpose is a vested property right.

6. MUNICIPAL CORPORATIONS—FRANCHISES—WATERWORKS.

  A franchise to operate a public waterworks business within a municipality can be contained in a charter but the mere grant of a charter without specific power to do so confers no general right to use the public streets.

7. SAME—METROPOLITAN DISTRICT—CHARTER—FRANCHISES.

  Metropolitan district whose charter did not include a franchise for use of public streets of constituent townships and which did not acquire such right in a portion of plaintiff township in contract with township by reason of specific exception in the contract to furnish water and sewage disposal service elsewhere in such township never acquired such right in the excepted area (Const 1908, art 8, §§ 28, 31; CL 1948, § 119.2).

8. INJUNCTION—FINDING OF TRIAL COURT—ESTOPPEL—WATER SERVICE—RECORD.

  Finding of trial court in suit to enjoin defendant city from furnishing water service in portion of plaintiff township in which city, as successor of metropolitan district which had never had a franchise for such purpose in such area, that township was not estopped to deny defendant's right to furnish water service in portion of unfranchised area *held*, supported by record, where connections made were either at subdivision developers' expense or by the metropolitan district to care for its own needs, there being no element of fraud, actual or constructive.

9. ESTOPPEL—FRAUD.

  The central element in the doctrine of estoppel is fraud, actual or constructive.

10. EQUITY—LACHES—WATER SERVICE—MUNICIPAL CORPORATIONS.

  The known intrusion of a metropolitan district into area served by township water service facilities by construction of a 12-inch water main and various T-connections therewith which township is willing to purchase from metropolitan district's successor *held*, not to have constituted laches barring township from relief by requiring defendant city, the successor, to turn over the water service to plaintiff without interruption to householders; jurisdiction for such purpose having been retained by the trial court.

Appeal from Ingham; Coash (Louis E.), J. Submitted October 16, 1958. (Docket No. 72, Calendar No. 47,740.) Decided June 5, 1959. Rehearing denied July 13, 1959.

Bill by the Township of Lansing, a municipal corporation, against the City of Lansing, a municipal corporation, and its Board of Water and Electric Light Commissioners for injunction and declaration of rights relative to supplying water to customers in township area. Decree for plaintiff. Defendants appeal. Plaintiff cross-appeals. Affirmed.

*Claude J. Marshall* (*Benjamin F. Watson,* of counsel), for plaintiff.

*Joseph Lavey,* City Attorney (*Joseph W. Planck,* of counsel), for defendants.

Edwards, J. The basic question in this case is whether the charter creating a metropolitan district "to furnish water and (or) sewage-disposal services to properties within or without its limits" can be regarded as a franchise to conduct a water business making use of public streets and alleys in the whole of the district described, absent any further grant of power.

The defendant-appellant city of Lansing, successor to the interests of Landel Metropolitan District, contends that the Landel Metropolitan District charter constituted such a franchise. The plaintiff-appellee township of Lansing claims the contrary. The circuit judge found for plaintiff-appellee and held "Landel never had a franchise to operate in the West Side District [the area in dispute]." We affirm.

These important facts can be clearly ascertained from this record:

(1) In 1945 the township of Lansing established by ordinance in its west side area a water-supply system known as the West Side Water District. The district was bounded on the north by the Grand river, on the west by Waverly road, on the east by the westerly city limits of the city of Lansing, and on the south by the Grand river. The township acted under authority of the revenue bond act of 1933, as amended (CL 1948 and CLS 1956, § 141.101 et seq. [Stat Ann 1958 Rev § 5.2731 et seq.]);

(2) In 1946 the Landel Metropolitan District was formed. The voters of Lansing township and a portion of Delhi township approved a charter creating the district under authority of article 8, § 31, of the Michigan Constitution (1908), and the metropolitan district act, as amended (CL 1948, § 119.1 et seq. [Stat Ann 1958 Rev § 5.2131 et seq.]). The boundaries of the new district included all of the township of Lansing and, hence, overlapped the boundaries of the previously-existing West Side Water District which was then in operation;

(3) In 1947 the voters of the township of Lansing authorized the township board to grant a franchise (including use of public streets and alleys) for supplying water and sewage service to the township. The question upon which they voted provided:

"Shall the township board of the township of Lansing, Ingham county, Michigan, be authorized to surrender to the Landel Metropolitan District, in said county, the rights, obligations and property of said township respecting or connected with the functions of, and utilities for supplying water and sewage disposal in said township, including the right to use the public highways for laying and maintaining water mains, sewers and appurtenances?"

Subsequent thereto the township board adopted a resolution granting such a franchise, but the resolution excepted the West Side area as to water service;

(4) For a considerable period of time thereafter the 2 systems operated harmoniously, since it was apparently a purpose shared commonly by Landel's officers and the township of Lansing officials to have Landel absorb the township's West Side Water District. In this period, each system rendered the other system assistance; and Landel, by contract with West Side* and using West Side water, built a 12-inch main through the largely-undeveloped northern portion of the West Side area, with the basic purpose of serving its own area north of Grand river. In 1950 Landel, by contract, took over operation of the entire West Side District as agent for West Side;

(5) In 1955 the city of Lansing acquired the Landel Metropolitan system and all of its property and rights;

(6) Thereupon the township of Lansing cancelled the 1950 agreement by which Landel was operating the West Side system;

(7) The city of Lansing asserted for the first time a claim that the Landel charter constituted a franchise to do business and use the public streets and alleys for water service in all Lansing township, including all of the West Side District area;

(8) The township of Lansing filed the instant bill of complaint seeking a declaration of rights and a permanent injunction restraining the city of Lansing from rendering water service in the West Side District area;

(9) The city of Lansing then by cross bill asked the court to declare that it had the right to sell

---

* This term is employed in this opinion to refer to the township of Lansing in its West Side Water System activity.

water anywhere in the township of Lansing, and to enjoin West Side from developing water service or furnishing water in the northern part of the West Side area.

These bare skeletal bones of the lengthy dispute presented to us contained all essential facts for determination of the principal legal issue in this case.

The ultimate result we view as determined by the provisions pertaining to franchise contained in the Michigan Constitution (1908)—particularly article 8, § 28:

> "No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks, or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

It seems apparent (and undisputed) that, prior to the incorporation of the Landel Metropolitan District, the township of Lansing had established a water utility under the previously-recited legislative authority, and with a franchise to furnish water by use of its public streets and alleys in the described West Side area. Thus, prior to Landel's incorporation, the township had, and was making use of, a lawful franchise for use of its own public streets and alleys to furnish water in the West Side area.

We note that the prohibition of article 8, § 28, quoted above is included in the following form in

article 8, § 31 (Const 1908), under which Landel was incorporated:

"*Provided,* That no city, village or township shall surrender any such rights, obligations or property without the approval thereof by a majority vote of the electors thereof voting on such question."

The same prohibition was quoted verbatim in the metropolitan district act (CL 1948, § 119.2 [Stat Ann 1958 Rev § 5.2132]), and was likewise contained verbatim in the Landel charter.

It is, of course, the vote by which this charter was approved that appellant points to as granting it a franchise not only to exist and do business in all of the township of Lansing, but also to furnish water and use the public streets and alleys therefor in the West Side area in competition with the township's existing duly-franchised utility.

Briefly, we do not believe the Landel charter language, or the vote approving same, may properly be so construed. The term "franchise" is not employed in the charter, nor in the resolution of approval. Nor is there any reference to power to use the streets and alleys.

The 2 provisions of possible applicability are found under the term "specific powers" in the Landel charter:

"(b) To acquire and succeed to any or all the rights, obligations and property of any city, village or township, or any parts thereof, comprising territory within the limits of the district, respecting, affiliated or connected with the function of supplying water and (or) sewage disposal: Provided, that no city, village, or township shall surrender any such rights, obligations or property without the approval thereof by a majority vote of the electors of any such city, village or township voting on such proposition."

"(e) To furnish water and (or) sewage-disposal services to properties within or without its limits."

It is subsection (e) (above) upon which appellant relies, claiming it must be read as granting a franchise to furnish water and use the public streets and alleys therefor, absent any other grant of power. Appellant contends that this includes the right to use the streets and alleys and furnish water within the West Side area in direct competition with appellee's own previously-existing and previously-franchised West Side Water District.

Briefly, we believe this right was one of those referred to in subsection (b) above, and that it was a right which the township could not grant under the quoted proviso of article 8, § 31 (Const 1908), without popular vote on the matter.

As we see it, approval of the Landel charter simply accomplished the incorporation of the Landel Metropolitan District and gave it the power "to be" for the purposes outlined, as opposed to the power "to do" and "the right to use public streets and alleys." These distinctions are old ones in our law.

*Grand Rapids Bridge Co.* v. *Prange,* 35 Mich 400 (24 Am Rep 585), is a case wherein plaintiff sought to recover toll-bridge charges from defendant user. Defendant refused to pay the charges, claiming plaintiff's 20-year franchise to extract toll charges had expired. Plaintiff corporation contended it had the right to extract toll charges because it was for that purpose for which it was organized. Chief Justice COOLEY, refusing to uphold plaintiff's contention, said (pp 403, 404):

"The corporation was brought into existence by the original organization, and existed before the franchise of taking tolls accrued to it by the action of the board of supervisors. That franchise was an additional privilege to those which the organiza-

tion gave; it was in the nature of a grant which the organization only clothed the corporation with the capacity to receive. The grant may cease and the corporate existence remain untouched. * * * 'for franchises, et cetera, are not essential to a corporation, but a privilege pertaining to it.' "

12 McQuillin, Municipal Corporations (3d ed), § 34.04, discusses the distinction as follows:

"The word 'franchises' has various significations, both in a legal and popular sense. The relation in which the term is employed controls its meaning. Speaking generally, a franchise is a special privilege of a public nature conferred by governmental authority upon individuals as such, or artificial personalities usually called corporations, and which privilege did not belong to individuals generally as a matter of common right. It is a generic term embracing all rights granted to corporations by the legislature of the State, or such rights as can only be granted by the State in the first instance. * * * Charter rights and privileges of a corporation are such only as are derived by virtue of its organization under legislative enactment. They do not include the right to conduct the business. * * *

"The term franchise as it is ordinarily used in the decisions and by text writers, and as used in this chapter, means the right granted by the State or a municipality to an existing corporation or to an individual to do certain things which a corporation or individual otherwise cannot do, such as the right to use a street or alley for a commercial or street railroad track, or to erect thereon poles and string wires for telegraph, telephone, or electric light purposes, or to use the street or alley underneath the surface for water pipes, gas pipes, or other conduits.

"This right so to use the streets or alleys of a municipality is sometimes designated as a secondary franchise, and sometimes as a special franchise."

The distinction between the franchise to exist as a corporation and the franchise to conduct a public utility is further emphasized in *Detroit Citizens' Street-Railway Co.* v. *Common Council of Detroit,* 125 Mich 673 (84 Am St Rep 589). In that case, validity of Detroit's tax assessment of the franchise to conduct a street-railway business was questioned. The court upheld the assessment, ruling that such a privilege is "property" properly subject to tax. Justice HOOKER said (p 678) that franchises could be classified as follows: (1) the right to organize and exist as a corporation; (2) the right to act generally as a corporation; (3) the special privileges granted to it which are not possessed by the individual under general laws.

"The third class consists of exceptional privileges —usually, if not always, connected with property— which the citizens generally do not enjoy, and these are frequently of much value. To apply what has been said to the relator: Any number of street-railway companies might be organized under the statute, and they would have the right to exist as lawfully-constituted corporations, with the corporate capacity to build and operate street railways anywhere in the State. But the *right* to build would have to be acquired. Until such a corporation should be able to obtain an easement in some highway,—which the statute does not, of itself, effectuate,—its privileges would be of little, if any, value." (pp 679, 680)

Justice HOOKER went further than this and held that the right to use the public streets for a street railway was a vested property right (p 682).

There is, of course, authority for the proposition that a charter can contain therein a special privilege or franchise. See, *e.g., City of Grand Rapids* v. *Grand Rapids Hydraulic Co.,* 66 Mich 606. In that case, the city of Grand Rapids brought a bill in equity to restrain defendant from continuing to lay

or keep water pipes in the city of Grand Rapids. The city had been authorized to set up a complete system of waterworks. Defendant was incorporated by legislative act for supplying the village of Grand Rapids with water for household and domestic purposes. The city claims it had never given defendant authority to use the streets for supplying water. The Court stated (p 611) that "when defendant was incorporated to distribute water, and authorized to lay pipes, this necessarily involved the right to do so in the usual way, so as to give access to all private property."

The Court proceeded to hold that the privilege granted by the charter did not cease when the city of Grand Rapids was incorporated, having power to furnish water to its citizens. This case is authority only for the proposition that a franchise to operate a waterworks business within a village or city can be contained in a charter. But the mere grant of a charter without specific power to do so confers no general right to use the public streets. *Dalton Street R. Co. v. City of Scranton*, 326 Pa 6 (191 A 133). No authority to lay pipe was contained in the Landel charter.

Although we do not regard it as a controlling factor, it is clear that the original parties (*i. e.*, Landel and the township of Lansing) thoroughly understood that a further grant of powers was required. They plainly viewed the 1947 vote on the question:

"Shall the township board of the township of Lansing, Ingham county, Michigan, be authorized to surrender to the Landel Metropolitan District, in said county, the rights, obligations and property of said township respecting or connected with the functions of, and utilities for supplying water and sewage disposal in said township, including the right to

use the public highways for laying and maintaining water mains, sewers and appurtenances?"

as designed to authorize the specific franchise needed. Significantly, the township board, as we have noted, excepted the West Side area when giving effect to this resolution.

In the agreement, plaintiff's exhibit 6, executed between Landel and the township of Lansing on August 19, 1947, we find this significant paragraph:

"5. Party of the first part does further agree to surrender to party of the second part, all their rights, and obligations and property of said township, respecting or connected with the functions and utilities for supplying water in said township, except in that part known as the West Side area, which is bounded on the east by the westerly limits of the city of Lansing, on the south by Grand river flowing eastwardly, on the west by the westerly limits of the township of Lansing and on the north by Grand river flowing westerly, and in which area the township owns and operates a water-supply system for supplying water to the users therein, and the township does further surrender to said Landel Metropolitan District, all rights and obligations and property of the township respecting or connected with the functions of and utilities for supplying sewage disposal in said township, including the right to use the public highway for the purpose of laying and maintaining water mains and sewers and appurtenances."

We conclude, as did the circuit judge, "Landel never had a franchise to operate in the West Side District."

Appellant also contends that appellee is estopped to deny appellant's right to furnish water in the northern part of the West Side area and, further, that the relief appellee sought and received should have been denied on grounds of laches.

.The brief answer to both of these arguments is simply that we cannot see that appellant on this record is entitled to any equitable relief.

. Appellant city of Lansing relies upon the fact that its predecessor, Landel, built a 12-inch water main through the northern part of the West Side area with "T" connections at appropriate intervals for household service, and that as subdivisions developed in the area Landel provided meters and water service, and that Lansing is continuing to provide same at present to nearly 600 homes. In all of this, the record bears out Lansing's contentions.

But the record also convinced the circuit judge, and convinces us, that the 12-inch main was built by Landel by agreement with West Side, rather than under claim of right, and it was built to serve Landel's own district north of the West Side area by purchase of water from West Side's wells. Thus Mr. Frank R. Theroux, who engineered the 12-inch main for Landel, testified:

"*Q.* How about future development between Saginaw street and the river to the north?

"*A.* Well, I felt that belonged to the West Side Lansing Township Water District.

"*Q.* You didn't take that into account at all, did you?

"*A.* It bore no weight in selecting my main, because I carried it all the way, the 12-inch main, clear across the river because I wanted a 12-inch main after it got north across the river.

"*Q.* Why did you provide for T-fittings at each platted street?

"*A.* Well, I wasn't adverse to the idea that some day there might be a change in plans, and as a matter of convenience, during construction, it was very easy to put in the fittings.

"*Q.* That Landel might take over West Side?

"*A.* I had nothing definite in mind, but I wanted to make provision for whatever it would be, whether

it would be the Landel coming in or the city or any-body else, any other organization. I thought I would be derelict if I didn't insert certain fittings."

The testimony also shows that the great bulk of the connections to this 12-inch main in the West Side area were installed at developers' expense while Landel was operating the West Side system as agent for West Side by specific contract.

We think that the facts taken as a whole support the chancellor's findings of fact—namely, "The record shows that Landel at all times recognized the West Side District and at no time did they claim to have a franchise to operate in the District," and "the record further indicates that all dealings between Landel and the West Side District were done by agreement between the parties."

Appellant argues in effect that Landel's instal-lation of hundreds of water connections to homes in the northern part of the West Side area between 1950 and 1955 can only be read as indicative of its assertion of a right to furnish water in this area; and that since the township knew of these installa-tions it should now be estopped from denying that right. Appellee claims on the other hand that these installations represented customers "stolen" from West Side by Landel at a time when Landel, as West Side's operating agent by contract, stood in a fiduciary relationship to West Side.

All in all, it seems to us that neither interpreta-tion of these facts is accurate. The basic fact of the Landel-West Side relationship was that each ex-pected the eventual absorption of West Side by Lan-del. Landel's method of providing needed service north of Saginaw street in the West Side area doubt-less appeared to it the cheapest and most practical method. Since it was operating agent for West Side (and looked forward to absorbing it), it anticipated

no complaint—and received none—until the merger plan was exploded when Lansing acquired Landel. To us, the whole of Landel's operation in West Side seems in the nature of preparation anticipatory of and looking forward to the merger which never came to fruition. It is difficult for us to see from this record any evidence that Landel acted without full knowledge of the facts, or that it relied upon any conduct of West Side, or that West Side misled Landel to its disadvantage either by action or inaction.

It appears that the basic expenses involved in Landel's West Side water service (other than the construction of the 12-inch main) were actually paid by the subdivision developers in order to secure water for the homes they were building. Landel paid the cost of the 12-inch main originally in order to supply its own district north of the West Side area. It, also, as nearly as we can tell from this record, paid for "T" connections and water meters for the residential customers. There is obviously no case of unjust enrichment presented here against the township of Lansing for it makes no claim to ownership of any of these facilities and, in addition, has offered to purchase them from appellant. Thus the chairman of the township water committee testified:

"This was after the April, 1955 ballot on the city taking over Landel but before the actual contract.

"We then offered to buy the 12-inch main, meters, fittings, et cetera, that Landel had put in. They advised us to wait until the city had taken over.

"We later, after October, 1955, met with city of Lansing officials. We advised of our interest in purchasing and if Landel had commitments with contractors we would fulfill those. There was more than 1 meeting. Exhibit No 15 is the only answer we got."

And the general manager of the Lansing board of water and light testified:

"I knew a committee had been appointed to meet with us. I heard them say in substance they would like to purchase certain facilities.

"The way it looks now we found ourselves representing 2 organizations, both of which wished to be buyers and neither desiring to sell."

The facts of this case simply do not present a case of "fraud, actual or constructive, [which] is the essential and central element" in the doctrine of estoppel. 3 Pomeroy's Equity Jurisprudence (5th ed), § 821, p 258.

See, also, *Ollig* v. *Eagles,* 347 Mich 49; *Smith* v. *O'Dell,* 240 Mich 185; 19 Am Jur, Estoppel, §§ 34, 42.

Much of what has just been said applies with equal force to appellant's argument concerning laches. West Side, however, plainly knew of Landel's water service in the northern portion of its area and took no steps to stop it. We do not see how such known intrusion could ripen into a franchise. But we must say that absent West Side's expressed willingness to purchase Landel's facilities, and thus in effect render its imprudence harmless, we would give more weight to appellant's argument pertaining to laches. As the record stands, appellant apparently does not stand to suffer any harm except the loss of business to which it never had any right. 19 Am Jur, Equity, § 508 *et seq.*

As to appellee's cross appeal, it seems obvious that more may ultimately have to be done than is currently provided for in the decree as signed. The flat injunction forbidding Lansing to continue to furnish water to customers in the West Side area was, wisely we believe, stricken from the proposed decree by the chancellor. But in the event these parties fail voluntarily to negotiate their differences to a reason-

able and practical solution once their basic rights have been established with finality, it is obvious that the chancellor will have to provide for an orderly take-over of water service to Lansing's present customers by West Side without interruption of service to the householders. The next to the last sentence of the decree as signed, however, appears to retain jurisdiction in the court for this very purpose.

Affirmed. Costs to appellee.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Voelker, and Kavanagh, JJ., concurred.