OPAL LAKE ASSOCIATION v MICHAYWÉ LIMITED
PARTNERSHIP

1. INJUNCTION—ANTICIPATORY NUISANCE—EQUITY—DECLARATORY RE-
LIEF.

A trial court was correct in hearing a case seeking an injunctive
remedy to stop plans for the development of a beach access site
prior to construction of the site and in anticipation of any
showing of harm where the complaint did not expressly state a
claim in terms of a nuisance action; because there was actual
controversy, the action might have been brought seeking de-
claratory relief, in which case the plaintiff would not be re-
quired to prove immediate danger of harm or the actual
occurrence of harm to be granted a declaration of its rights
(GCR 1963, 521).

2. INJUNCTION—ANTICIPATORY NUISANCE—EQUITY.

Partially developed plans for an access site to lake frontage by
nonriparian lot owners which would create a nuisance to
everyone if a significant number decided to use the lake at the
same time are not so "anticipatory" as to negate the possibility
of giving injunctive relief; a construction of the nuisance doc-
trine that would reach an opposite result would ignore equity's
power to fashion a remedy to prevent as well as cure harm.

3. WATERS AND WATER COURSES—RIPARIAN RIGHTS—ANTICIPATORY
NUISANCE—ESTOPPEL.

A trial court's review of the reasonableness of proposed plans of
defendant for the use of a lake access site was proper before
full development of plans for use of the site and during promo-
tion of lot sales giving free access to the lake to nonriparian as
well as riparian lot purchasers; if the plaintiff riparian owners'
association were to wait while the defendant continued its

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 42 Am Jur 2d, Injunctions § 31.

[3] 42 Am Jur 2d, Injunctions § 22.

  Mandatory injunction prior to hearing of case, 15 ALR2d 213.

[5] 56 Am Jur, Waters §§ 241, 273 *et seq.*

[6] 42 Am Jur 2d, Injunctions §§ 336–340.

development plans and promotional sales it might be estopped by its conduct from complaining that the riparian rights of its members were being adversely affected.

4. INJUNCTION—EQUITY—SCOPE OF REMEDY.

A trial court was correct in reserving the right in its judgment, after having found that the plaintiff was entitled to injunctive relief against the defendant's proposed development of its land, later to define the scope of the injunction that would issue, and to take further testimony after the trial court entered its opinion in order that it could fashion a truly equitable injunctive remedy.

5. WATERS AND WATER COURSES—RIPARIAN OWNERS—REASONABLE USE.

The several riparian owners on an inland lake and their lessees and licensees may use the surface of the whole lake for boating and fishing, so far as they do not interfere with the reasonable use of the waters by other riparian owners, and normally any reasonable use cannot be precluded.

6. WATERS AND WATER COURSES—LAKE FRONTAGE—INJUNCTION—ENFORCEMENT.

An injunction fashioned by the trial court setting forth restrictions on the use of lake frontage by a land development company which seemed reasonable on their face but presented difficulties in their intended enforcement by leaving too many questions open about the final remedy will not be affirmed by the Court of Appeals.

Appeal from Ingham, Donald L. Reisig, J. Submitted Division 2 March 7, 1973, at Lansing. (Docket No. 14002.) Decided May 23, 1973.

Complaint by the Opal Lake Association against Michaywé Limited Partnership and the Department of Natural Resources for an injunction to stop the development by Michaywé Limited Partnership of a proposed lake access site. Injunction granted allowing the development under certain restrictions. Plaintiff appeals. Defendant Michaywé cross-appeals. Affirmed in part, vacated in part, and remanded for further proceedings.

*John M. Jereck,* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *W. A. Steiner, Jr.),* for defendant Michaywé Limited Partnership.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski,* Assistant Attorney General, for defendant Department of Natural Resources.

Before: DANHOF, P. J., and HOLBROOK and BASHARA, JJ.

HOLBROOK, J. Plaintiff is a non-profit association composed of people whose interest is to beautify, preserve and maintain Opal Lake and its environs in Otsego County. All but two of the association's 59 members own riparian land on Opal Lake. The lake itself is a relatively small one of approximately 120 acres of surface water and between 2-1/2 to 3 miles of shoreline. It is relatively clean and placid, presently has approximately 70 dwellings ringing its shores, a public access site with 200–240 feet of shore frontage, and as yet has no commercial activities on its shoreline. Defendant Michaywé[1] is a land development company owning 1,990 acres in the area of Opal Lake that is being subdivided and sold by the limited partnership. Michaywé's plans include the development of 2,250 residential lots, as many as 1,300 condominium units, and approximately 300 mobile home sites. Three other lakes on the acreage are also under

[1] The Department of Natural Resources was joined as a defendant because of its jurisdiction under the Inland Lakes and Streams Act. MCLA 281.743; MSA 11.463. The court below found no cause of action against the department after plaintiff stipulated that no statutory violation was involved in the case. The DNR's involvement in the case is of no interest to us here, therefore.

development, along with a golf course. Other recreational activities are intended to be developed for lot owners in Michaywé. Michaywé had at the time of the suit sold 125 lots in two areas that had been platted, but only one lot had a building under construction at that time. Michaywé owns 800 feet of shoreline of varying depth on Opal Lake which totals approximately six acres in area.

Michaywé intends to build a Swim 'n Sun Club on its Opal Lake property, equipped with a sun deck, club house, and a number of small boats, and then grant to all parties purchasing property in the Michaywé development membership in the Michaywé Owner's Association, which association will be given full title to the Opal Lake beachfront and which association will grant access to all its members to the Swim 'n Sun Club. The Opal Lake Association sought an injunction against Michaywé to stop development of the club, claiming that the proposed use of the 800 feet of shoreline owned by Michaywé would overburden Opal Lake and violate the riparian rights of all other shoreline property owners. After trial the court below agreed that the proposed use of the Michaywé property would be unreasonably burdensome and granted the sought-after injunction, but under the stipulation that further testimony could be taken to determine the scope the injunction should take. Plaintiff objected to anything but a complete halt in the development of the Michaywé plan for the Opal Lake access site, and therefore objected to taking of further evidence. The court allowed more testimony to be heard, however, and then agreed to structure the injunction in order to allow development of the access site under certain restrictions proposed by Michaywé. These restrictions were, after approval of the court, to be filed with the

register of deeds, would be irrevocable, and would apply to all members of the Michaywé Owner's Association, which itself would have power to enforce the restrictions. The Opal Lake Association would also be given power to enforce the restrictions and to inspect the access site to see that they were complied with. Briefly, the restrictions were:

1) Only members of the Michaywé Owner's Association or their guests could use the facilities;

2) The Opal Lake Park would be enclosed by a fence and provide for no more than 50 parking spaces;

3) Only 15 small non-power boats, provided by the Association, could be launched from the property;

4) Only 120 individuals, excluding boaters, could use the facilities at any one time. The court additionally ordered that Michaywé could no longer use promotional materials to indicate an unrestricted use of the Opal Lake frontage for lot purchasers. Plaintiff now appeals the final character of the injunction, and defendant Michaywé cross-appeals, claiming issuance of the injunction was premature since any alleged harm was anticipatory only and could not properly be remedied by means of an injunction. If we agreed with the defendant on its cross-appeal, we would necessarily completely dispose of this case without regard to any of the other issues raised. Therefore, we deal with the cross-appeal first.

I

On its cross-appeal defendant claims that the trial court erred in granting an injunction in anticipation of any showing of harm caused by the

defendant on the Opal Lake frontage. This argument is based on the assertion that plaintiff's action is really one in nuisance, and "Equity, as a rule, will not interfere in advance of the creation of a nuisance where the injury is doubtful or contingent, and anticipated merely from the use to which the property is to be put". *Plassey v S Loewenstein & Son,* 330 Mich 525, 529 (1951). Since the Swim 'n Sun Club is not yet constructed and there are as of yet no members of the proposed Michaywé Owner's Association who will have rights to use the Opal Lake frontage, defendant argues that any harm plaintiff seeks to enjoin is merely speculative at this point in time, and not subject to injunctive relief pursuant to the just-quoted equity maxim. While defendant admits that the sale of lots is proceeding according to its sales projections, it argues that only one lot owner has begun construction, and conceivably only small numbers might use the club site in the future. Until a more immediate threat of harm arises, then, defendant claims there can be no justification for restricting use of the access site or its development in any manner.

Our own conclusion is that the trial court was correct in hearing the case despite the fact that the Swim 'n Sun Club is not yet under construction. Our decision on this issue is based on a number of different reasons. In the first place, plaintiff's complaint did not expressly state a claim in terms of a nuisance action. The closest plaintiff came to such an allegation is contained in paragraph 11 of the complaint.[2] We do not take

---

[2] The paragraph reads: "That defendant partnership's proposed use will result in unreasonable interference with riparian rights of other riparian owners on Opal Lake, including the members of plaintiff corporation; that said proposed use will result in overcrowding and excessive boats and boating on said Opal Lake; that plaintiff is informed and believes that the proposed development of a 'Swim 'n

this paragraph to absolutely mean, when the complaint is read as a whole, that a nuisance action was intended. Secondly, we take note of the fact that plaintiff might have brought its action as one seeking a declaratory judgment under GCR 1963, 521. Obviously there is an actual controversy between the parties laying the ground work for such an action. GCR 1963, 521.1. The court could, moreover, grant an injunctive remedy. *Lansing Twp v City of Lansing,* 356 Mich 338 (1959). The key point here, however, is that unlike the traditional nuisance action as defendant interprets it, under the declaratory relief action plaintiff would not be required to prove immediate danger of harm or actual occurrence of harm to be granted a declaration of its rights. See 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Comments 2 & 3, pp 683–686. It is instructive on this point that plaintiffs in the benchmark case of *Thompson v Enz,* 379 Mich 667 (1967), chose to seek a declaratory judgment of their respective rights as riparian landowners, as opposed to seeking an injunction in a nuisance action. Agreement with defendant that this action here is one in nuisance might, therefore, mean the denial to plaintiff of its day in court simply because it chose not to seek a declaratory judgment, even though the controversy and potential remedies that could be had are exactly identical no matter what form of relief, declaratory or otherwise, is sought. Needless to say, because we are in equity we are

Sun Club' without a central sewage system will result in pollution to the lake and lead to a diminution of the natural resources of said lake for fishing and swimming and other recreational uses; that said proposed use by defendant partnership is for the purpose of commercial exploitation of its resort community and not for the purpose of making reasonable use of those riparian rights it may have, if any; that unless enjoined from said development, plaintiff will suffer irreparable and permanent injury by way of riparian rights".

disinclined to allow the characterization of this action as one in nuisance if it will cause such a patently inequitable result.

Thirdly, even assuming that the complaint states a cause of action in nuisance, that does not mean we concur with defendant's argument that no immediate threat of harm has been shown to the riparian rights of the members of the Opal Lake Association. In support of its objection to the issuance of an injunction to abate this "anticipated nuisance", defendant cites numerous cases: *Fenestra, Inc v Gulf American Land Corp,* 377 Mich 565 (1966), where a request for an injunction against a corporation holding a large stock interest in a smaller corporation with alleged intent to take control of the smaller corporation and strip it of its assets was denied, when proof of such plan was not shown; *Brent v Detroit,* 27 Mich App 628 (1970), where the Court declined to enjoin the construction of a city swimming pool in a well-established park where the pool site had already been moved 400 feet away from plaintiff's adjoining land there was no "showing of actual nuisance or the strong possibility of such (nuisance)"; *Warren Twp Sch Dist v Detroit,* 308 Mich 460 (1944), where plaintiffs were denied an injunction to halt the construction of an airport, the Court holding no nuisance *per se* in the airport, but agreed that future nuisances when arising could be enjoined; *Sommers v Detroit,* 284 Mich 67 (1938), where the Court denied an injunction to plaintiff landowners against the operation of a City of Detroit garbage incinerator; *St Clair Shores v Grosse Pte Wds,* 319 Mich 372 (1947), where the Court denied the Village of St. Clair Shores an injunction against Grosse Pointe Woods prohibiting the establishment of a park within plaintiff's village limits, rejecting the claim that nuisance would result; *Gableman v Conservation Dept,* 309 Mich 416

(1944), where plaintiff brought a nuisance suit to prevent establishment of a public access site on a lake, and the Court denied the injunction holding that the proposed plan itself was not a nuisance; *Plassey, supra,* where plaintiffs were denied an injunction against the erection of a slaughterhouse, after a previous suit affirmed the grant of a permit by the city planning commission to erect a slaughterhouse under the applicable zoning laws; *Detroit v S Loewenstein & Son,* 330 ˜Mich 359 (1951); *Wolfschlager v Applebaum,* 213 Mich 180 (1921), where an injunction to prohibit operation of an auto paint and upholstering business was denied since it was not shown that the business would *necessarily* involve a nuisance; *Swetland v Curtiss Airports Corp,* 41 F2d 929 (ND Ohio, 1930), where an injunction was denied to prevent airport construction on grounds similar to those in *Warren Twp Sch Dist, supra; Briggs v Grand Rapids,* 261 Mich 11 (1932), where an injunction to prevent conversion of a city park into a football playing field was denied, partial grounds for denial of the injunction being that no showing of present nuisance had been made. We observe that except for the *Brent* and *Fenestra* cases, and a Federal case in Rhode Island, *Commerce Oil Refining Corp v Miner,* 281 F2d 465 (CA 1, 1960), none of the cases defendant cites are less than 20 years old; most if not all are dated at a time when there was little organized or successful opposition to air or water pollution or unfettered land developments of the kind we are faced with today. Moreover, the *Fenestra* Court declined to issue an injunction primarily because there was no proof of an organized plan to strip the Fenestra Corporation of its liquid assets, in contrast to our case here, where there is an acknowledged plan to develop the Opal Lake access site by Michaywé. The Court in the

most recent cited case, *Brent, supra,* remarked about the special disinclination of courts to enjoin the construction of public swimming pools, and noted the fact that it was reviewing the discretionary act of a municipal government, to which great leeway is ordinarily given.

The balance of the cases are also distinguishable on other grounds besides age. Almost all the cases cited involve suits seeking to enjoin the acts of public agencies of various sorts, which acts are not subject to injunctive action without a showing of a *clear* abuse of discretion by the public agency involved. *Keller v Southfield,* 2 Mich App 323, 328–329 (1966); *Brent, supra.* Courts normally are less willing to anticipate harm where acts of public bodies are contested, than where private nuisance is alleged, simply because there is no threat to the doctrine of separation of powers by court involvement in private, as opposed to public, actions. *Wolfschlager* is the only clearly "private" case cited by defendant for the proposition that "anticipatory" nuisances will not be enjoined. It can be distinguished on the grounds that there the plaintiffs simply did not support their allegation that noise, smoke and smell from defendant's business would necessarily cause such discomfort as to constitute a nuisance. Here there seems to be little argument that should a significant number of the proposed 2,250 individual lot owners, 1,300 condominium unit owners and 300 mobile home site owners and their guests in Michaywé decide to use the Opal Lake access site at the same time a nuisance to *everyone* will result. Here also plans have been nearly fully developed for the access site. One hundred twenty-five purchasers had already at the time of this suit bought land in the Michaywé project on the apparent representation

that they would have access to the Swim 'n Sun Club. It seems patently unreasonable to ignore such facts and their probable effects until the clear waters of Opal Lake are muddied, the noise around the Swim 'n Sun Club is deafening, and the other private shore owners on Opal Lake have put up "For Sale" signs on their property simply because in some distinguishable past nuisance cases the courts refused to enjoin anticipated harm. We do not believe the unrestricted use of the Michaywé beachfront by hundreds, if not thousands, of non-riparian landowners is so "anticipatory" as to negate the possibility of giving injunctive relief. A construction of the nuisance doctrine that would reach an opposite result if applied here would ignore equity's power to fashion a remedy to prevent as well as cure harm.[3]

A final justification for our refusal to declare premature the trial court's review of the reasonableness of the proposed use of the Opal Lake access site rests in *Thompson v Enz*, 385 Mich 103 (1971). In that case the Court held that plaintiffs, having brought their declaratory judgment action *after* defendants had completed most of the excavation required for construction of canals to Gun

[3] It is notable that the Environmental Protection Act of 1970, MCLA 691.1201, *et seq.;* MSA 14.528(201) *et seq.,* which allows private citizens to bring actions to *prevent* pollution, prescribes that the affirmative burden to prove that there is no feasible alternative to a defendant's polluting conduct will rest on a defendant once a plaintiff establishes that a defendant has, *or is likely to,* pollute. The act, while certainly a new means of protecting the environment, is also in part a legislative recognition of the ancient powers of a court to hear nuisance cases, balance equities and fashion suitable remedies. On this point see Joseph L. Sax & Roger L. Conner, *Michigan's Environmental Protection Act of 1970: A Progress Report,* 70 Mich L Rev 1004, 1037, 1064–1069 (1972). For our purposes the act is significant by way of analogy in that it represents a legislative acknowledgment of a court's power to recognize anticipated harm and fashion a remedy to prevent the harm where its potential becomes discernible from evidence taken in an adversary proceeding.

Lake to give riparian access to non-riparian lot owners, were now equitably estopped by their conduct from complaining about infringement of their riparian interests. Plaintiff here must function under the same equitable principles operating in *Thompson.* If the plaintiff were to wait to sue until the Swim 'n Sun Club and its environs were fully developed and while Michaywé continued to promote its lot sales with the enticing representation of giving free access to Opal Lake to all lot purchasers, then plaintiff might very well be estopped by its conduct from complaining that the riparian rights of its membership are being adversely affected. While it may be argued that since plaintiff has sued here it has taken sufficient action to prevent estoppel from later arising, it seems to us absurd procedure to force plaintiff to sue so that estoppel might not arise and then dismiss its suit for having been prematurely brought.[4] We do not think that civil procedure has reached that convoluted point.

For all the above reasons, then, we rule that the trial court properly allowed review of plaintiff's request for injunctive relief. No other issue raised by defendant's cross-appeal is significant enough to warrant further comment.

## II

Having disposed of defendant's cross-appeal,

[4] While conceivably there might be other ways a plaintiff could avoid the charge of estoppel by conduct than by bringing a suit to halt the harmful activity of a defendant, filing suit is the clearest and surest way that a plaintiff can express objection that his rights are being violated, at least from an evidentiary standpoint for future actions. There is at least some risk in relying on other kinds of "objecting" conduct in that it may be difficult to prove in later suits that a plaintiff's conduct was meant to be an assertion of his rights so that he would not later be subject to a defense of estoppel.

then, we may proceed to discuss the merits of this action. Plaintiff frames the basic issue thus:

"After having found that plaintiff was entitled to injunctive relief against the proposed development by defendant Michaywé, was the trial court correct in allowing additional proofs with regard to restrictions of use and concluding that the amended proposal of defendant Michaywé was not unreasonable?"

Having properly raised this issue here, plaintiff's counsel then goes on to argue the reasonableness of the proposed use by Michaywé, which is *not* the issue framed above. We take this opportunity to remind all counsel that an issue not briefed on appeal will normally be considered abandoned. *Mitcham v Detroit,* 355 Mich 182, 203 (1959); *People v Rogers,* 10 Mich App 380, 382 (1968). Since we decide both the issue framed and the issue briefed by plaintiff's counsel against plaintiff, and since we deem the issues in this case of considerable importance, we will decline to invoke the *Mitcham and Rogers* rule, and will instead discuss both issues.

First, then, as to the issue specifically framed we have no difficulty. The trial court reserved the right in its judgment to later define the scope of the injunction that would issue. To this effect further testimony was taken after the trial court entered its opinion in order that the court could fashion a truly equitable injunctive remedy. In *Thompson* at page 110 it is stated:

"That equity may shape her relief 'according to the situation as it may present itself when the time for decree arrives' was definitely settled with the handing down of *Herpolsheimer v A B Herpolsheimer Realty Co,* 344 Mich 657, 665 (1956) and *L'Hommedieu v Smith,* 351 Mich 223, 229 (1958)."

27 Am Jur 2d, Equity, p 818. Moreover, an injunction is always subject to modification or dissolution if the facts merit it. *Misch v Lehman,* 178 Mich 225, 228 (1913); *Furniture Manufacturers Assn v Grand Rapids Exhibitors Guild,* 268 Mich 685, 689 (1934). The modification or dissolution powers of the equity court would be illusory if the court could not in its discretion take additional testimony to see if dissolution or modification was in fact warranted.

Second, as to the issue actually briefed, plaintiff attacks the reasonableness of the use to which Michaywé's Opal Lake access site will be put by lot purchasers, and seeks to halt *any* development of the access site by Michaywé. Plaintiff would apparently be satisfied only if the access site itself were subdivided for residential lots and only those resulting lot owners had access to Opal Lake. Plaintiff's position is not tenable. The rule is that on an inland lake where there are several riparian owners, such proprietors and their lessees and licensees may use the surface of the whole lake for boating and fishing, so far as they do not interfere with the reasonable use of the waters by the other riparian owners. *Bauerle v Charlevoix Road Commrs,* 388 Mich 520, 525 (1972); *Beach v Hayner,* 207 Mich 93, 96 (1919). Plaintiff cannot normally preclude, therefore, any *reasonable* use of Michaywé's Opal Lake access site by Michaywé's licensees. The trial court, in setting the scope of the injunction, adopted certain restrictions outlined in the introduction of this opinion which would need be complied with if Michaywé was to use the Opal Lake site as planned. We have no doubt that on their face at least these restrictions seem reasonable. Difficulty arises with the final form of the injunction, however, not because of the

restrictions themselves but because of their intended enforcement.

As stated above, both the Michaywé Owner's Association and Opal Lake Association would have power to enforce the injunction containing the restrictions according to the judgment reached below. We believe the enforcement rights vested in the Opal Lake Association would be illusory. Even though the Opal Lake Association would have power to inspect the Michaywé access site to determine if the limit of 120 persons using the access site has been exceeded, the burden of inspection would be a constant one if the limits were to be effectively enforced, a burden on the plaintiff and its membership that we cannot in equity countenance. Riparian owners have co-equal rights to reasonably use the lake. *Bauerle, supra.* If, however, one set of owners is forced to be the watchdog of the use by another set of owners, an inequality arises that converts the right to peaceably use the water into a burden for only some riparian landholders. Moreover, assuming the Opal Lake Association should someday discover, for example, that the 120-person-use limit was exceeded, would a suit against the yet to be created Michaywé Owner's Association really be an effective remedy? Would each member of the Michaywé Owner's Association be on such notice of the injunction that if it were violated they could individually be held in contempt?[5] Presumably the Owner's Association officers could be held in contempt for violations of the injunction, but we can picture protracted and expensive legal battles in the offing if such contempt proceedings were brought, proceedings that certainly might deter from suit a finan-

---

[5] For further illustration, if there were 175 people using the lakefront in violation of the restrictions, would all 175 people be in contempt or only the last 55 people to enter?

cially limited Opal Lake Association in search of an *immediate* remedy. What happens, also, if the Opal Lake Association is disbanded sometime in the future?[6] Who, then, can enforce the restrictions? Quite simply, we have too many questions about the final remedy fashioned below to accept it totally. An injunction that will be ineffectual will not be granted. *Dutch Cookie Machine Co v Vande Vrede,* 289 Mich 272, 283 (1939).

Our conclusion does not mean a settlement of the controversy is impossible. For example, assuming 120 people is a reasonable maximum number that could use the Michaywé property on Opal Lake, it might be proper to assign access rights by deed to only 120 lots, or some other number the parties might agree on or that the court finds is reasonable. Only these lot owners and their guests would have the right to use the Opal Lake Beach, and presumably since they would have a vested ownership interest in the site they would make sure others without access rights in the Michaywé development did not use the site. By this remedy, then, the burden of enforcement of the agreed-upon restrictions would shift from the Opal Lake Association membership to those lot owners with access rights. Thus, this settlement would avoid the major fault of the injunctive remedy fashioned below, and would be equitable to both sides in this dispute. Unfortunately, we are without sufficient factual information to know what constitutes an appropriate number of lots to which access rights should be given. There have already been 125 lots sold and the purchasers vested rights, if any, are not known. Therefore, we must remand so that the appropriate factual determinations may be made.

---

[6] What happens, also, if the Michaywé Owner's Association is disbanded?

In doing so we affirm the trial court's finding that restrictions are necessary for the Michaywé Opal Lake beachfront in order to preserve the riparian rights of all other Opal Lake riparian landowners, but we vacate that portion of the judgment that places the burden of enforcement of these restrictions on the Opal Lake Association.

Remanded for proceedings consistent with this opinion. No costs, neither party prevailing fully.

All concurred.