MARKEY, J.
(concurring in part and dissenting in part). These consolidated appeals concern whether the county’s authority to “site” and “erect” buildings pursuant to the county commissioners act (CCA), MCL 46.1 et seq., see MCL 46.11(b) and (d), has priority over the zoning ordinance of the Charter Township of Coloma (the township). I respectfully dissent in part from the majority opinion. Despite *137 recognizing that Berrien County constructed a new building—the clear and only purpose of which is the indoor discharging of firearms—the majority concludes that these cases are controlled by the holding of Herman v Berrien Co, 481 Mich 352; 750 NW2d 570 (2008). But Herman held only that the outdoor shooting ranges were not ancillary to a different, classroom-instruction-only building. The majority cites no language in the CCA to support its conclusion but instead relies on the idiom of “the tail wagging the dog.” In my view, the dog in these cases is the CCA, which has supremacy over the tail, the township’s ordinances. Because the new structure is a “building,” one must look to the language of the CCA for a basis to preclude the county from invoking its authority to “site” it. Principles of construction dictate that a statute must be enforced according to its plain terms, Mitan v Campbell, 474 Mich 21, 24; 706 NW2d 420 (2005), and that “nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself,” Omne Fin, Inc v Shacks, Inc, 460 Mich 305, 311; 596 NW2d 591 (1999). I read nothing in the CCA to preclude the county from exercising its authority to site buildings to take advantage of previously constructed infrastructure. And, for the reasons I discuss later in this opinion, I believe this previously constructed infrastructure is ancillary to the newly constructed county building and indispensable to its normal use. For these reasons, I conclude that the circuit court’s reasoning was sound in both cases, and I would affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
These consolidated appeals concern whether a county’s authority under the CCA to “site” and “erect” *138 buildings, MCL 46.11(b) and (d),[1] has priority over the zoning ordinance of the township with respect to using an open-air, three-sided structure within which defendant Berrien County Sheriffs Department conducts firearms training of law enforcement officers. During their training, the officers fire weapons from inside the structure toward targets located in a previously constructed shooting range outside the structure. The shooting range used is one of six outdoor shooting ranges that were the subject of prior litigation in Docket No. 325335 that resulted in our Supreme Court’s ruling in favor of the plaintiff township residents who sought to enforce the township ordinance. Herman clarified the Court’s prior decision in Pittsfield Charter Twp v Washtenaw Co, 468 Mich 702; 664 NW2d 193 (2003), which held that, in general, the CCA has priority over local ordinances.
At the time of the prior litigation in Docket No. 325335, the 14-acre site at issue consisted only of an indoor (classroom) firearms training building that was adjacent to the outdoor shooting ranges. In Herman, *139 our Supreme Court reiterated the factual background of these cases:
This case involves a piece of property that is located in Berrien County and Coloma Township. The property consists of a 14-acre parcel of.land. The property is controlled by defendant, Berrien County, under a 20-year lease from a party that is unrelated to this case. The county entered into the lease in March 2005. The county leased the property with the intention of using it for a firearms training facility, which various law enforcement agencies would use for training exercises. Accordingly, in May 2005, the county contracted with DLZ Michigan, Inc., to design a master plan and conduct a feasibility study for the proposed facility. This master plan included constructing a building of more than 3,000 square feet at the center of the parcel to serve as a training and support building. This building would have a parking lot with 24 standard parking spaces (and three handicapped spaces), multiple outdoor light poles, and a driveway. The facility would also have numerous outdoor shooting ranges. The ranges were to be set up like the spokes of a wheel that require the shooter to fire out from the center of the parcel. The center of the parcel is where the building would be located.. . . The county initially planned on building the ranges first and erecting the building later. During the course of this litigation, construction of both the shooting ranges and the building was started and is now completed. [Herman, 481 Mich at 354-356 (citations omitted).]
The Court explained that the outdoor shooting ranges violated township ordinances:
Operation of the county’s shooting ranges would contravene several local ordinances. First, under the township’s zoning ordinance, the shooting ranges are not a permitted land use given the property’s current zoning status (primary agricultural). Additionally, gun clubs are not permitted in this zoning status unless the Coloma Charter Township Board has issued a special land use permit, which the county has not received. Finally, the *140 gun ranges produce noise levels that purportedly exceed the township’s anti-noise ordinance.5
5 The parties have not litigated the merits of whether the shooting ranges violate the anti-noise ordinance because, up to this point, the main dispute hinged on whether the shooting ranges were immune from this ordinance. Nonetheless, the county’s own feasibility study predicted that the gun range would produce noise levels above 87 decibels extending to approximately 370 of the surrounding acres. This apparently violates the anti-noise ordinance, which prohibits noise levels above 65 decibels between 7:00 a.m. and 10:00 p.m. and 55 decibels at all other times.
[Herman, 481 Mich at 356 & n 5.]
The Herman plaintiffs “are a group of individuals who own property located in close proximity to the shooting ranges.” Id. at 358. “In late November 2005, plaintiffs filed a declaratory judgment action that aimed to stop operation of the facility. The complaint alleged that the county’s facility was prohibited by the township’s zoning ordinance; and the plaintiffs’ amended complaint additionally alleged that the facility violated the township’s anti-noise ordinance.” Id. Relying on Pittsfield, the circuit court granted defendant Berrien County (the county) summary disposition, and this Court affirmed in a split decision.[2] Our Supreme Court reversed, holding that the CCA authority extended only to “site” buildings and such land uses that are ancillary to the county building and indispensable to its normal use. Herman, 481 Mich at 367-369. Stated otherwise, the Court held that “the scope of the CCA’s priority over [local regulation] is limited to ancillary land uses that are indispensable to the building’s normal use.” Id. at *141 368-369. The Court reasoned that the outdoor shooting ranges were not indispensable because the indoor training and support could be conducted without the outdoor shooting ranges being located next to the building. For that reason, the Court held that “under the CCA, the shooting ranges are not given priority over the township’s ordinances.” Id. at 370-371. The Court remanded the case to the circuit court for further proceedings consistent with its opinion. Id. at 371.
On remand, the circuit court entered a permanent injunction on November 10, 2008, enjoining the county “from utilization of the shooting ranges heretofore constructed by it in Coloma Township, Berrien County, Michigan.” A copy of the injunction that was filed in the clerk’s office was signed “approved as to form” by then county counsel R. McKinley Elliott, who was, in January 2012, elected a member of the county board of commissioners. The county apparently was never served with the injunction, and there was no proof of service in the circuit court file.
After the Supreme Court’s decision in Herman, the county began conducting necessary law enforcement firearms shooting training at an existing private gun club in the township, known as the Coloma Rod and Gun Club (CRGC). Apparently to accommodate the additional use, CRGC constructed six additional shooting ranges for the use of law enforcement firearms training and other firearms shooting. In October 2010, the township brought an action to enjoin CRGC’s expansion of its nonconforming use. On November 27, 2012, the circuit court ruled in the township’s favor, finding that the CRGC’s expansion of its gun ranges by adding and using six new pistol bays was a nuisance per se and ordering the nuisance abated. This order was not appealed.
*142 Seeking to lawfully use the previously constructed shooting ranges adjacent to its classroom training facility, the county passed a resolution on August 8, 2013, to construct a “Shooting Range Building” at the outdoor range property. The resolution noted that Herman had decided outdoor ranges were not indispensable to the indoor training building and that the county had unsuccessfully attempted to obtain a special land-use permit from the township. The resolution then provided:
WHEREAS, Corporate Counsel advised the County Board on August 1, 2013, that there was legal support for the construction of a shooting range building on the range area of the Training Facility which would be consistent with the “indispensable use” standard of the Herman decision, thereby falling under the authority provided in the [CCA], and exempt from Township regulation.
NOW, THEREFORE, BE IT HEREBY RESOLVED that the Berrien County Board of Commissioners authorize and directs the County Administrator to proceed to have a Shooting Range Building designed and constructed on the shooting range area of the County Training Facility at 7110 Angling Road, Coloma Charter Township, and authorizes expending the minimal funds necessary ... to accomplish said building construction not to exceed $11,500.00; and take such further necessary action with the landowner to remain consistent with the County’s lease of said property.
Based on the foregoing resolution, the county constructed an open-air, pole-barn-type structure consisting of a covered cement slab that is completely open on one side, facing the longest of the previously constructed outdoor shooting ranges. Defendants describe it as follows:
The Gun Range Building consists of a 43x20 foot concrete pad with, a 42x16 foot building, comprised of *143 eight (8) 6x6 posts and five (5) 4x6 posts and a full roof constructed over the concrete pad. All of the posts are permanently cemented into the ground. Partial walls exist on three (3) sides of the Gun Range Building with open areas at the top and bottom of each wall. An overhang and awning type structure exists along the fourth open wall (front side) so as to allow shooting out to the Current County Range and to provide additional safety for shooting and sound baffling, and provide a shelter for firearms training. The walls, ceiling, and overhang are permanent in their construction and the open areas allow for proper ventilation and drainage, while at the same time, allowing firearms training, including live firing of weapons, to be conducted within the Gun Range Building with the actual shooting occurring from within the building out to targets located at the other end of the Current County Range. The County’s Gun Range Building was completed in September of 2013, and after completion, it and the Current County Range were used by the Sheriff and deputies to conduct the required firearms training ....
On November 14, 2013, the Herman plaintiffs filed a motion seeking enforcement of the 2008 injunction and asking the circuit court to hold the county in civil and criminal contempt for its violation of the order (Docket No. 325335). Also, on the same date, the township filed a new action in the circuit court, seeking to enjoin the county and its sheriffs department from discharging firearms at the site in violation of the township’s zoning ordinance (Docket No. 325226). The circuit court held a number of joint hearings and issued a series of rulings in 2014 that modified the 2008 injunction, ruled in favor of the county to allow use of the shooting-range building, and found, after a trial, that the county was not guilty of criminal contempt.
After an initial evidentiary hearing, the circuit court on January 17, 2014, issued an opinion and order modifying the 2008 injunction while the litigation was *144 pending and denying the township’s request for a preliminary injunction. The circuit court, citing Ali v Detroit, 218 Mich App 581; 554 NW2d 384 (1996), and dictionary definitions, found that the county would likely prevail on its claim that the new structure was a “building” within the meaning of the CCA. The court reasoned “that the assembly is a permanent box like structure having a roof used for firearms skill proficiency assessment and training. It has three walls that enclose space albeit with gaps for ventilation.” The court also found that “the assembly was permanently fixed to the ground at a specific location with a roof and three walls enclosing space for purposes of confining the Sheriffs deputies participating in the assessment and training for which the assembly was specifically designed and constructed.”
The circuit court in its initial opinion and order also rejected plaintiffs’ argument that the structure could not be a county “building” because it was not listed in the examples noted in MCL 46.11(d), as cited in Herman, 481 Mich at 367 n 14. The court ruled that the statute is clear and unambiguous and that the term “county buildings” includes any “buildings” that are “owned, leased, operated, used or maintained by a county for activities authorized by law.” The circuit court further ruled that the county’s motive (to avoid Herman) was not relevant; what mattered was the result of the county’s actions. In that regard, the circuit court opined:
The result of the Board’s action was that the shooting range building was erected and sited near the Classroom. That building was purposely erected and the site was purposely determined to take advantage of the Ranges which the Board was advised could then be used for shooting despite Herman because, as an indispensable use, the shooting would no longer be subject to the [township’s] ordinances.
*145 The Board had the power to erect “necessary buildings”. Whether the building was necessary was a [county board] legislative decision which the judiciary should not second guess.
Nevertheless, the circuit court found that “firearms assessment and training for the sheriffs deputies is necessary” and required by MCOLES (Michigan Commission on Law Enforcement Standards).[3] The circuit court explained:
The mandatory MCOLES Annual Firearms Standard for Active Duty Law Enforcement Officers — Primary Duty Weapon (2010) requires both knowledge and an annual assessment of mechanical firearms skills proficiency. While the knowledge component may be taught in the Classroom Building that existed at the time Herman was decided, the assessment component requires shooting at multiple targets, placed at multiple distances, use of cover, close range shooting, mandatory combat reload, appropriate handling of stoppages, shooting from different cover positions, shooting with the support hand only, discussions on deadly force issues, and decision making.
The circuit court also found the evidence supported that use of the building for live-fire training improved safety and reduced noise. Thus, the circuit court determined “the record supports a preliminary conclusion that the Board properly exercised its power to erect a necessary county building [MCL 46.11(d)] and to determine its site [MCL 46.11(b)].” (Bracketed material in original.)
The circuit court also determined that the shooting range adjacent to the open end of the building met Herman’s “indispensable use” test, opining:
*146 The normal use of the shooting range building is to facilitate safe and quiet outdoor firearms assessment and training for sheriffs deputies. .. . The evidence supports a preliminary finding that the shooting range building could not be used for outdoor firearms training without shooting. While consuming only a small fraction of the assessment and training time, the shooting is the essence of the assessment and training. Safety dictates that the shooting not take place without the protection offered by the Range. In other words, the Range is indispensable to the normal use of the shooting range building.
The circuit court then entered an order temporarily modifying its 2008 injunction to permit the sheriff and actively employed sheriffs deputies to use the outdoor shooting range
for shooting any weapon carried on duty by the shooter for MCOLES required annual assessments and recommended training from the confines of the shooting range building while under the direct supervision of an MCOLES recognized firearms instructor on Tuesdays, Wednesdays and Thursdays between 8:00 a.m. and 5:00 p.m., except on days observed as holidays ....
On March 28, 2014, the county moved for summary disposition, seeking dismissal of the civil and criminal contempt claims. A hearing was held on May 19, 2014, and on the basis of governmental immunity, see In re Bradley Estate, 494 Mich 367; 835 NW2d 545 (2013), the circuit court granted the motion with respect to plaintiffs’ claim for civil contempt. The circuit court’s August 20, 2014 order left unresolved the question of criminal contempt.
The Herman plaintiffs on August 4, 2014, moved for summary disposition on criminal contempt, but the circuit court ruled that the criminal contempt claims required assessment of witness credibility at a trial. Later, on December 2, 2014, the court conducted a trial *147 on the criminal contempt charge and issued an opinion and judgment of acquittal. The circuit court found that although plaintiffs had proved beyond a reasonable doubt that the county was aware of the 2008 Herman decision and that the county violated the injunctive order by beginning use of the outdoor shooting ranges on September 4, 2013, the plaintiffs “failed to prove beyond a reasonable doubt that the violation was willful” because of lack of evidence to support a finding “beyond a reasonable doubt that the violation was an intentional violation of a known legal duty.” The circuit court found that all testifying witnesses were credible and determined that no agent of the county had actual knowledge that the court had entered its 2008 injunc-tive order. The court also found “reasonable doubt that the County had imputed knowledge through Commissioner Elliott in his then capacity as County’s Corporate Counsel.” There was no proof of service in the file, and Elliott testified he signed a blank page “approved as to form” at the request of opposing counsel for an order to close the circuit court file after the Supreme Court’s decision in Herman. The circuit court also found that the county board was respectful of the Herman decision and acted on advice of counsel that its actions would not violate that case, which also created reasonable doubt regarding the charge of criminal contempt.
With respect to the civil litigation, the township moved for summary disposition under MCR 2.116(0(10) on August 29, 2014. The Herman plaintiffs joined in this motion for summary disposition on September 29, 2014. After hearing arguments on the motions, the circuit court on October 13, 2014, issued an opinion and order, granting defendants summary disposition in both cases under MCR 2.116(I)(2). The court modified its permanent injunctive order in the Herman case (Docket No. 325335) and denied the *148 township’s request in the new case (Docket No. 325226) to declare that defendants were in violation of the permanent injunctive order; the court also denied the Herman plaintiffs’ request to enforce the permanent injunction. The court issued a modified opinion and order on October 23, 2014, that only changed the statement that the scheduled trial would concern criminal contempt rather than civil contempt.
The circuit court’s analysis in its October 23, 2014, opinion mirrored that of its opinion of January 17, 2014, when the court denied the township’s request for a preliminary injunction and granted temporary relief from the 2008 permanent injunction. The circuit court concluded as a matter of law that the shooting-range structure is a “county building” under MCL 46.11(b) and (d). The court again concluded that whether the shooting-range building was “necessary” was a legislative decision and not one that the court could second-guess. But, as in its preliminary ruling, the circuit court again discussed that firearms training was necessary to satisfy MCOLES standards and given that the shooting-range building “enhanced safety and reduced noise, the Board rationally concluded that the gun range building was a ‘necessary building’.” The circuit court ruled, as a matter of law, “the Board properly exercised its power to erect a necessary county building [MCL 46.11(d)] and to determine its site [MCL 46.11(b)].” (Bracketed material in original.)
With respect to whether the shooting range adjacent to the shooting-range building met Herman's “indispensable use” test, the circuit court once again determined that it did.
The normal use of the shooting range building is to facilitate safe and quiet outdoor firearms training for sheriffs deputies. This normal use contrasts with normal *149 use of the nearby Classroom Building at issue in Herman which was for indoor classroom training .... The shooting range building could not he used for outdoor firearms and training assessment without shooting. While consuming only a small fraction of the training time, the shooting is the essence of the training and assessment. Safety dictates that the shooting could not take place without the protection offered by the Range. In other words, the Range is indispensable to the normal use of the shooting range building.
Plaintiffs’ ancillary/primary dichotomy has no basis in reason or in Herman. It is axiomatic that if the Board has the power to site a building, it has the power to site the building’s normal and primary use. The power to site a building would be meaningless without the power to site its primary use, and, as Herman held, its indispensable ancillary uses. Implicit in Herman is that the Board’s power to site a building includes the power to site its primary use, and the only restraint imposed by Herman is on the Board’s power to site dispensable ancillary uses. If shooting is the primary use, it consumes the Herman restraint.
On the basis of this analysis, the circuit court concluded that the county’s authority under the CCA to site necessary county buildings “trumps [the township’s] zoning and noise ordinances.” The circuit court therefore denied the plaintiffs’ motion for summary disposition and granted summary disposition to defendants under MCR 2.116(I)(2).
The circuit court also modified its permanent injunction by providing an exemption for
the one shooting range directly adjacent to and southwest of the open front of the shooting range building constructed . .. pursuant to Resolution A1308168 ... for firearms shooting solely for MCOLES required annual assessments and recommended training from the confines of the shooting range building while under the direct supervision of a qualified firearms training instructor.
*150 In each case, the circuit court denied reconsideration by order entered December 11, 2014. Plaintiffs now appeal by right. This Court, by order of February 13, 2015, consolidated these appeals “to advance the efficient administration of the appellate process.”[4]
II. ANALYSIS FOR DOCKET NO. 325226 AND DOCKET NO. 325335
A. STANDARD OF REVIEW
This Court reviews de novo a trial court’s decision on a motion for summary disposition. Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(0(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence. Corley v Detroit Bd of Ed, 470 Mich 274, 278; 681 NW2d 342 (2004). A court must view the proffered evidence in the light most favorable to the party opposing the motion and properly grants the motion when the undisputed facts establish a party is entitled to judgment as a matter of law. Maiden, 461 Mich at 120.
This Court also reviews de novo questions of statutory interpretation. Pittsfield, 468 Mich at 707. The primary goal of statutory interpretation is to discern the intent of the Legislature; the first step when doing so is to review the language of the statute. Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999). Undefined terms in a statute must be accorded their plain and ordinary meaning; a court may consult a dictionary regarding the ordinary meaning of a word. Pierce v Lansing, 265 Mich App 174, 178; 694 NW2d 65 (2005). “When the language of a statute is unambiguous, the Legislature’s intent is clear and judicial con *151 struction is neither necessary nor permitted.” Odom v Wayne Co, 482 Mich 459, 467; 760 NW2d 217 (2008) (citation and quotation marks omitted). Courts must enforce plain and unambiguous statutory language as written. Herman, 481 Mich at 366.
B. DISCUSSION
I conclude that the circuit court correctly ruled that the structure at issue is a “county building” as that term is used in MCL 46.11(b) and also that the county has the authority to “erect” the structure by determining it is “necessary,” MCL 46.11(d). The circuit court also correctly ruled that the county has authority to “site” the building that has the normal purpose of training law enforcement officers in the use of firearms by discharging them from within the building. Further, the circuit court correctly ruled that the adjacent shooting range is ancillary and indispensable to the normal use of the building, giving the county use priority over township ordinances. Herman, 481 Mich at 362 n 13, 368-369. Consequently, the circuit court properly granted defendants summary disposition under MCR 2.116(0(10). Maiden, 461 Mich at 120.
Our Supreme Court held in Pittsfield that the authority to “site” buildings granted to counties by the CCA in MCL 46.11(b) and (d) had priority over a conflicting township zoning ordinance enacted pursuant to the authority of the Township Zoning Act, MCL 125.271 et seq.[5] Pittsfield, 468 Mich at 703-704, 710-715. The Court made this determination on the basis of legislative intent expressed in the text of the legislation pertaining to the two local governments. Id. at *152 709-710. The Court concluded that the authority of a county to “site” a county building was only limited by “ ‘any requirement of law that the building be located at the county seat.’ ” Id. at 705 n 2, quoting MCL 46.11(b). Specifically, “the Legislature, by explicitly turning its attention to limits on the county siting power and deciding on only one limitation, must have considered the issue of limits and intended no other limitation.” Pittsfield, 468 Mich at 711. The Court rejected the township’s argument that its zoning had at least equal priority because the Legislature had exempted certain activities from township zoning but not county activity. The Court determined that this argument was “flawed because this approach would cause MCL 46.11(b) to be mere surplusage.” Id. at 713.
As discussed already, the underlying litigation in these cases resulted in our Supreme Court deciding whether the county’s authority to site county buildings extended to ancillary uses of the property adjacent to the building. Herman, 481 Mich 352. The property at the time of the prior litigation consisted of 14 acres with only an indoor firearms classroom training building and nearby outdoor shooting ranges. The Court focused on the term “site” and held that “land uses that are ancillary to the county building and not indispensable to its normal use are not covered by the CCA’s grant of priority over local regulations.” Id. at 354. For that reason, the Court held that a county’s authority under the CCA extended only to erecting and siting buildings and such land uses that are ancillary to the county building and indispensable to its normal use. Id. at 368-369. Finding the CCA unambiguous, the Court held that a county’s power to site is limited by the language of the statute to county buildings. Id. at 366-369. The Court explained that a plain reading of MCL 46.11(b) and (d)
*153 leads to the conclusion that the Legislature intended to give counties the power to “site” and “erect” “county buildings.” Each time the CCA grants the power to site, it invariably relates that power to “buildings.” Notably, the Legislature never semantically links the power to site with any nonbuilding activity or land use. In other words, the CCA does not give counties the power to site a county “activity” or county “land use”; rather, it always relates its grant of siting power to “buildings.” This leads to the conclusion that the siting power is limited to buildings. [Id. at 366-367.]
Ultimately, the Court held that the outdoor shooting ranges then existing did not have priority over the township ordinances “because they are land uses that are not indispensable to the normal use” of the classroom firearms training building. Id. at 354, 370. The Court further reasoned that while the outdoor shooting ranges complemented the normal use of the building for indoor classroom training and practice, the outdoor shooting ranges used for outdoor shooting practice and training were not indispensable to that normal use of the building, which was indoor classroom training. Id. at 370-371. “For purposes of CCA priority, a building’s normal use only extends to the actual uses of that particular building because, again, that is the extent of the power granted to the county by the CCA.” Id. at 370.
Accordingly, for the county to site and erect the structure at issue in contravention of township ordinances, the structure must be a “building” that has as its normal use the discharging of firearms within its confines. Because the CCA does not define the term “building,” it is appropriate to consult a dictionary to determine its plain and ordinary meaning. Pierce, 265 Mich App at 178, citing Ali, 218 Mich App at 584. Plaintiffs unpersuasively argue that cases like Pierce and Ali that discuss the plain meaning of the term *154 “building” are not reliable authority because they discuss that word’s meaning in relation to the “public building” exception to governmental tort immunity, MCL 691.1406. I find these cases important because they discuss the plain meaning of the term “building,” which also is at issue in the present cases. Because the analysis in Pierce and Ali regarding the plain and ordinary meaning of the undefined term “building” is based on the proper technique of consulting dictionary definitions for that purpose, Johnson v Pastoriza, 491 Mich 417, 436; 818 NW2d 279 (2012), those cases are worthy of consideration regarding the plain meaning of the term “building” as used in the CCA. Furthermore, individual words in a statute must be read in context and in light of the purpose of the statute as a whole. Herman, 481 Mich at 366; Sun Valley Foods, 460 Mich at 237.
For these reasons, the circuit court correctly relied on Ali and dictionary definitions to determine that the shooting-range structure was a building within the meaning of the CCA. The structure, similar to an open-on-one-side pole barn, has a 43-by-20-foot concrete pad, with eight six-inch-square posts cemented into the ground that support partial walls on three sides and a full roof. The structure was specifically designed to allow active shooting of firearms out the open side of the structure toward targets in the longest of the previously constructed shooting ranges, which are basically open spaces surrounded by earthen berms to prevent fired rounds from escaping the premises. The structure is permanent and has an overhang on the open side partially protecting shooters from the elements. This description fits within the definition of “building” found in Merriam-Webster’s Collegiate Dictionary (11th ed): “a usu[ally] roofed and walled structure built for permanent use (as for a dwelling).”
*155 The conclusion that the structure at issue is a building is also supported by this Court’s opinions in Ali and Pierce. In Ali, the Court held that a permanent, walled, bus passenger shelter made of plexiglass and steel, which was designed to protect people from inclement weather, was a building for purposes of the public building exception to governmental immunity. Ali, 218 Mich App at 585. The Ali Court, id. at 584-585, determined the plain meaning of the undefined statutory term “building” from dictionaries:
“Building” is defined as a “relatively permanent, essentially boxlike construction having a roof and used for any of a wide variety of activities, as living, entertaining, or manufacturing,” The Random House College Dictionary: Revised Edition (1984), and a “structure designed for habitation, shelter, storage, trade, manufacturing, religion, business, education and the like. A structure or edifice enclosing a space within its walls, and usually, but not necessarily covered with a roof.” Black’s Law Dictionary (5th ed).
Further, in Pierce, 265 Mich App at 178-180, the Court relied on Ali to conclude that a parking structure described as a relatively permanent, essentially box-like structure made of concrete with a roof and enclosed on all sides by half-walls was a public building within the meaning of MCL 691.1406. Both Pierce and Ali distinguished Freedman v Oak Park, 170 Mich App 349, 353-354; 427 NW2d 557 (1988). In Freedman, a covered park bench was determined not to be a public building within the meaning of MCL 691.1406. See Pierce, 265 Mich App at 179, and Ali, 218 Mich App at 585 (describing Freedman as involving “merely a portable bench with a roof over it”). Indeed, Freedman does not rest entirely on its determination that the covered park bench was not a building but also on its conclusion that the apparently portable structure was not dangerous or defective so as to support the plaintiffs tort claim. *156 Freedman, 170 Mich App at 353-354. For these reasons, the circuit court properly distinguished Freedman and relied on Ali and dictionary definitions to conclude that the permanent box-like structure having a roof and partial walls and used for firearms training was a building.[6] Moreover, because the county erected and maintained the building on property that the county possessed under a long-term lease, and the county used the structure for the lawful purpose of necessary firearms training for county law enforcement officers, the structure necessarily is a county building within the meaning of MCL 46.11(b) and (d).
Plaintiffs present several unavailing arguments contrary to the conclusion that the shooting-range building used for discharging firearms has priority over the township’s zoning ordinance. Plaintiffs first argue that the shooting-range building is not “necessary” as that term is used in MCL 46.11(d) and that the phrase “necessary buildings for jails, clerks’ offices, and other county buildings” limits the county’s authority to erect and site buildings. Plaintiffs cite no authority for this argument. It is settled that an argument presented without supporting authority is abandoned on appeal. Houghton v Keller, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). On the other hand, defendants cite Pittsfield, in which the Court opined that “the Legislature expressly stated only one limitation on the authority of the county to site buildings” and that “the Legislature, by explicitly turning its attention to limits on the county siting power and deciding on only one limitation, must have considered *157 the issue of limits and intended no other limitation.” Pittsfield, 468 Mich at 711. The one limit is found in MCL 46.11(b), which restricts the siting of a county-building with respect to “any requirement of law that the building be located at the county seat.”
I agree with the circuit court that the word “necessary” in MCL 46.11(d) only means that the county’s authority to erect and site a building is limited to lawful purposes, i.e., ones not prohibited by a state statute or the Constitution. Contrary to plaintiffs’ contention, the circuit court’s ruling does not render the term “necessary” superfluous but rather recognizes the traditional limits of judicial review of legislative acts in our constitutional system of separation of powers. The circuit court correctly ruled that although the county acted through a resolution to move its agents to erect and site the shooting-range building, this action was legislative.[7] See Blank v Dep’t of Corrections, 462 Mich 103, 122; 611 NW2d 530 (2000) (opinion by KELLY, J.) (opining that “passing a resolution to override rules promulgated by an executive branch agency is an inherently legislative action”); Bengston v Delta Co, 266 Mich App 612, 621-622; 703 NW2d 122 (2005) (noting that legislative acts include passing an ordinance or resolution). Judicial review of legislative acts is deferential. For example, judicial review of the constitutionality of legislation is generally limited to whether the legislation has a rational basis. “Under rational-basis review, courts will uphold legislation as long as that legislation is rationally related to a legitimate government purpose.” Crego v *158 Coleman, 463 Mich 248, 259; 615 NW2d 218 (2000). “Rational-basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with ‘mathematical nicety,’ or even whether it results in some inequity when put into practice.” Id. at 260 (citation omitted). “[I]f constitutionally empowered to act, ‘the propriety, wisdom, necessity, utility, and expediency of legislation are exclusively matters for legislative determination.’ ” Charles Reinhart Co v Winiemko, 444 Mich 579, 600 n 38; 513 NW2d 773 (1994) (opinion by Riley, J.), quoting Black v Liquor Control Comm, 323 Mich 290, 296; 35 NW2d 269 (1948) (citation and quotation marks omitted). For this reason, whether the shooting-range building was necessary for the purposes of MCL 46.11(d) was a legislative decision that the judiciary should not second-guess. Id.
Plaintiffs next argue that the shooting-range building does not come within the authority of MCL 46.11(b) because the building does not fit within the types of “county buildings” listed in MCL 46.11(d) (“jails, clerks’ offices, and other county buildings”), citing the doctrine of ejusdem generis and the statement in Herman, 481 Mich at 367 n 14. The Herman Court held that siting power in the CCA is limited to buildings and highlighted this limitation by noting, “In fact, the CCA expressly includes examples that uniquely fit into the category of buildings: courthouses, jails, clerks’ offices, and other county buildings.”[8] Id. But nothing in Herman indicates that the Court’s footnote was intended as anything other than an extension of the Court’s analysis that a county’s authority to site county buildings, MCL 46.11(b), and erect necessary buildings, MCL 46.11(d), “does not equate to the power to review *159 and approve site plans,” Herman, 481 Mich at 365. Thus, the footnote merely accentuates the importance of the Court’s holding that a county’s CCA authority is limited to buildings, not activities or land uses.
Additionally, the circuit court correctly determined that “[t]he CCAis an unambiguous statute.” Id. at 366. An unambiguous statute must be enforced as written, and there is no need to resort to secondary rules of construction. See People v Jacques, 456 Mich 352, 355; 572 NW2d 195 (1998). “A plain reading of [MCL 46.11(b) and (d)] leads to the conclusion that the Legislature intended to give counties the power to ‘site’ and ‘erect’ ‘county buildings.’ ” Herman, 481 Mich at 366. The Legislature has placed only one limit on this authority: “That limitation is that the county cannot use the power that was given in MCL 46.11 to site buildings if there is any other requirement of law that county buildings be located at the county seat.” Pitts-field, 468 Mich at 711. In sum, there is nothing in the plain language of the CCA or our Supreme Court’s opinions in Pittsfield and Herman that limits the authority of the county to site particular kinds of county buildings.
Applying the doctrine of ejusdem generis does not alter this conclusion. Under this doctrine of statutory construction, “where a general term follows a series of specific terms, the general term is interpreted to include only things of the same kind, class, character, or nature as those specifically enumerated.” Neal v Wilkes, 470 Mich 661, 669; 685 NW2d 648 (2004) (citation and quotation marks omitted). But when the general term or phrase comes before the more specific terms, the doctrine of ejusdem generis does not apply to limit the meaning of the more general term or phrase. Brown v Farm Bureau Gen Ins Co of Mich, 273 Mich *160 App 658, 664; 730 NW2d 518 (2007). With respect to MCL 46.11(b) and (d), while the general phrase “other county building” follows the listing of “jails, clerk’s offices” in Subsection (d), the pertinent general term in that subsection, “necessary buildings,” and the critical phrase “county building” in Subsection (b), are located before the listing of types of buildings in Subsection (d). Consequently, the doctrine of ejusdem generis does not apply to limit the meaning of the more general phrases of “necessary buildings,” MCL 46.11(d), or “county building,” MCL 46.11(b). Brown, 273 Mich App at 664. Moreover, as discussed already, nothing in the plain language of the CCA indicates that the Legislature intended to limit a county’s authority to “site” buildings. MCL 46.11(b). Thus, ejusdem generis simply does not apply. Jacques, 456 Mich at 357.
The circuit court also correctly concluded that the county’s use of an outdoor shooting range adjacent to the new building was ancillary and indispensable to the building’s normal use. Herman, 481 Mich at 368-369. Plaintiffs’ arguments to the contrary are based on the false premise that the adjacent outdoor shooting range was being used for “outdoor shooting” and “outdoor firearms training.” While it is true that bullets fired inside the building travel to targets outside the building and located in what had previously been used as an outdoor shooting range, and the fired bullets are restrained from leaving the county’s property by berms, the discharge of firearms (shooting) and the firearms training occur within the confines of the building. Further, the facts are not disputed that the shooting-range building was specifically designed and used for the purpose of shooting and firearms training from within the building. Consequently, shooting and firearms training are the normal uses of the shooting-range building. “For purposes of CCA priority, a build *161 ing’s normal use only extends to the actual uses of that particular building because, again, that is the extent of the power granted to the county by the CCA.” Id. at 370 (emphasis added). Therefore, the adjacent outdoor shooting range provides an ancillary and indispensable use: the placement of targets at which to shoot and the construction of surrounding berms to ensure the safety and protection of the surrounding community from fired bullets. Id. at 357, 368-369.
I reject, as did the circuit court, plaintiffs’ argument that outdoor shooting or outdoor firearms training was the “primary” use of the property to which the building was the “ancillary” use. The county has the authority “to ‘site’ and ‘erect’ ‘county buildings.’ ” Id. at 366; MCL 46.11(b) and (d). When the county exercises this authority, the normal uses of the building have priority over local zoning and other local regulations to the contrary. Herman, 481 Mich at 362 n 13. The CCA does not otherwise authorize the siting of a particular land use apart from the siting of a building, but Herman held that a county may “conduct ancillary land uses in order to make normal use of the building.” Id. at 366-368. And “the ancillary land use will only have priority over local regulations if it is indispensable to the building’s normal use.” Id. at 369. Thus, the proper analysis is to initially determine the normal use of the sited and erected county building and then determine whether any nonbuilding use is indispensable to the building’s normal use. See id. at 369-370. “In order to decide if this ancillary land use is indispensable to the normal use of the county’s building, we must define the normal use of the county’s building.” Id. at 369. As discussed in the preceding paragraph, the county’s normal use of the shooting-range building was the discharge of firearms for the purpose of law *162 enforcement officer training, and the adjacent outdoor shooting range was an indispensable ancillary use to the building’s normal use.
Plaintiffs’ only remaining argument is that the circuit court’s ruling accords to counties unfettered authority to site any land use anywhere under the guise of conducting that use through the siting and erecting of a building. This, however, is essentially a policy argument with respect to enforcement of MCL 46.11(b) and (d). But this Court must enforce an unambiguous statute as written. Herman, 481 Mich at 366. The legislative branch of government makes policy choices, and the judiciary may not interfere under the guise of statutory interpretation because the legislation is perceived to be unjust, inconvenient, unnecessary, impolitic, unwise, unfair, or otherwise a bad policy choice. See Johnson v Recca, 492 Mich 169, 197; 821 NW2d 520 (2012); Fowler v Doan, 261 Mich App 595, 603; 683 NW2d 682 (2004).
For all the foregoing reasons, I would affirm the circuit court’s ruling that the county’s authority under the CCA to site and erect buildings, MCL 46.11(b) and (d), has priority over the township’s ordinances with respect to the shooting range building at issue. I would also affirm the circuit court’s grant of summary disposition to defendants and all orders and judgments implementing the circuit court’s ruling regarding MCL 46.11(b) and (d).
III. ADDITIONAL ISSUES IN DOCKET NO. 325335
A. RELIEF FROM THE PERMANENT INJUNCTION
Plaintiffs argue that the circuit court erred by relying on MCR 2.612(C)(1)(e) and “changed circumstances”— the county’s new gun-range structure—to modify its *163 2008 injunction. Plaintiffs argue that the circuit court found that the county had violated the injunction by resuming use of the shooting ranges in September 2013 before seeking a modification of the court’s order but nevertheless failed to apply the doctrine of clean hands and deny the county equitable relief.
This court reviews for an abuse of discretion the circuit court’s decision regarding injunctive relief and its decision on a motion to amend the prior judgment. Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist, 293 Mich App 143, 146; 809 NW2d 444 (2011); Ligon v Detroit, 276 Mich App 120, 124; 739 NW2d 900 (2007). The circuit court abuses its discretion only when the court’s decision is outside the range of reasonable and principled outcomes. Mich AFSCME Council 25, 293 Mich App at 146. See also id. at 146 & n 2 (stating that a trial court’s decision that is within the range of reasonable and principled outcomes is not an abuse of discretion and an injunction may always be modified if the facts support it).
The circuit court did not abuse its discretion by modifying the 2008 permanent injunction in accordance with the changed circumstances. “On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds: ... it is no longer equitable that the judgment should have prospective application.” MCR 2.612(C)(1)(e). Furthermore, “an injunction is always subject to modification or dissolution if the facts merit it.” Opal Lake Ass’n v Michaywé Ltd Partnership, 47 Mich App 354, 367; 209 NW2d 478 (1973).
In this case, the facts had changed since the issuance of the 2008 injunction. Specifically, the circuit court correctly ruled that the county had the authority *164 under MCL 46.11(b) and (d) to site and erect the shooting-range building and also correctly ruled that the adjacent shooting range was an indispensable nonbuilding use ancillary to the building’s normal use of active shooting firearms training. The county’s use of the building and adjacent shooting range thus had priority over the township’s ordinances. Herman, 481 Mich at 362 n 13, 369-370. The circumstances had changed such that, with respect to the shooting-range building and its adjacent range, the county was immune from enforcement of township regulations. Id. at 361 n 11, 362 n 13. Because the underlying legal authority supporting the injunction with respect to the shooting-range building and its adjacent range had been eliminated by the county’s authority under the CCA, it was “no longer equitable that the [2008 injunction] should have prospective application.” MCR 2.612(C)(1)(e). Because of these changed circumstances, the circuit court did not abuse its discretion by determining that the 2008 injunctive order should be modified. Id.; Mich AFSCME Council 25, 293 Mich App at 146; Opal Lake Ass’n, 47 Mich App at 367.
Plaintiffs’ arguments that the circuit court abused its discretion by failing to apply the doctrine of clean hands and by granting the county equitable relief by modifying its injunction are without merit. The clean-hands doctrine provides “that one who seeks the aid of equity must come in with clean hands.” Stachnik v Winkel, 394 Mich 375, 382; 230 NW2d 529 (1975) (citation and quotation marks omitted). The doctrine is based on the principle that a court of equity, as the enforcer of conscience and good faith, should not assist a wrongdoer. Id. Hence, the clean-hands doctrine has been applied to deny equitable relief to parties who are themselves guilty of wrongful conduct. Rose v Nat’l Auction Group, 466 Mich 453, 463-464; 646 NW2d 455 *165 (2002). But the clean-hands doctrine is intended to preserve the integrity of the court, and it is discretionary with the court whether to invoke it. Stachnik, 394 Mich at 386.
In this case, because the' circuit court determined that the county did not willfully violate the 2008 injunction and because the changed circumstances rendered prospective enforcement of an injunction regarding the shooting-range building and adjacent range inequitable, the circuit court did not abuse its discretion by declining to invoke the doctrine of clean hands and instead granting partial equitable relief from the 2008 injunction. Id.; Mich AFSCME Council 25, 293 Mich App at 146; Ligón, 276 Mich App at 124.
B. ATTORNEY FEES UNDER MCL 600.1721
Plaintiffs also contend that the circuit court erred by not awarding attorney fees under MCL 600.1721 because plaintiffs suffered “actual loss”—attorney fees—as a result of defendants’ contemptuous conduct. Plaintiffs contend that the circuit court’s reliance on Bradley Estate, 494 Mich 367, to grant defendants summary disposition of plaintiffs’ claim for damages under § 1721 is misplaced. Plaintiffs argue that Bradley Estate is distinguishable from this case because the plaintiff in Bradley Estate sought damages for an underlying tort claim and in this case, plaintiffs sought attorney fees as an initial claim under § 1721 on the basis of the county’s violation of the 2008 injunction. Plaintiffs also argue that Bradley Estate does not extend beyond a “civil wrong” to criminal contempt, in which attorney fees may also be recovered. Taylor v Currie, 277 Mich App 85, 100; 743 NW2d 571 (2007).
This Court reviews de novo a trial court’s determination to grant summary disposition. Odom, 482 Mich *166 at 466. A motion for summary disposition under MCR 2.116(C)(7) may assert that a claim is barred by immunity granted by law and may be supported or opposed by affidavits, depositions, admissions, or other documentary evidence. Id. The allegations of the complaint are accepted as true unless contradicted by documentary evidence. Maiden, 461 Mich at 119. The court properly grants the motion when the undisputed facts establish a party is entitled to judgment as a matter of law. Odom, 482 Mich at 466; MCR 2.116(C)(7) and (I)(1). Issues of statutory interpretation are reviewed de novo. Bradley Estate, 494 Mich at 377.
I find plaintiffs’ efforts to distinguish Bradley Estate unavailing. Although plaintiffs present a debatable point that the Bradley Estate holding may not extend to criminal contempt, the circuit court granted defendants summary disposition as to plaintiffs’ claim under MCL 600.1721 only with respect to civil contempt. The circuit court denied summary disposition with respect to criminal contempt and, after a trial, found defendants not guilty of criminal contempt. Plaintiffs’ claim for attorney fees under § 1721 with respect to civil contempt is controlled by the Bradley Estate holding that under the governmental tort liability act (GTLA), MCL 691.1401 et seq., governmental entities are immune from tort liability, which includes claims for indemnification or compensatory damages under MCL 600.1721. Bradley Estate, 494 Mich at 371-372. Accordingly, the circuit court properly granted defendants summary disposition under MCR 2.116(C)(7) of plaintiffs’ claims for damages resulting from defendants’ civil contempt violation of the 2008 injunction.
Plaintiffs’ argument that the holding of Bradley Estate does not apply to the facts of this case because criminal contempt was alleged is also unavailing. The *167 Court’s opinion in Bradley Estate does repeatedly refer to claims under MCL 600.1721 as being for a civil wrong based on civil contempt. See Bradley Estate, 494 Mich at 371-372, 383 (stating that “torts and contracts [are] the two types of civil wrongs”), 385, 393, 397. But a tort claim may also be based on intentional conduct that is criminal. The critical issue is whether a party seeks compensatory damages under MCL 600.1721, see Bradley Estate, 494 Mich at 389 n 54, 392 nn 58 and 59, or whether there is only an effort to protect the integrity or authority of the court by punishing the contemptuous party, id. at 394-396. When a party seeks compensation or indemnification under MCL 600.1721, the Bradley Estate Court’s analysis regarding governmental immunity would still apply to such a claim whether the “alleged misconduct” or the “other breach of a legal duty” is labeled “civil” or “criminal” because if the action permits an award of damages as compensation for an injury caused by a noncontractual civil wrong, “then the action, no matter how it is labeled, seeks to impose tort liability and the GTLA is applicable.” Id. at 389. See also Taylor, 277 Mich App at 100 (holding that MCL 600.1721 makes no distinction between civil and criminal contempt, and its requirement of indemnification for actual loss applies even when a court imposes a criminal sanction).
Of course, as noted, the simple answer on the facts of this case is that the circuit court did not grant defendants summary disposition on the claim of criminal contempt but instead conducted a trial, finding defendants not guilty of that charge. Therefore, regardless of the merits of plaintiffs’ argument that the holding of Bradley Estate does not preclude the application of MCL 600.1721 to cases of criminal contempt, “the possible effect of that statute in this case is nullified by the trial court’s explicit finding that neither the Sheriff *168 nor the board were in contempt. . . Local 214 v Genesee Co Bd of Comm’rs, 401 Mich 408, 410-411; 258 NW2d 55 (1977).
C. CRIMINAL CONTEMPT
Plaintiffs assert that as a municipal corporation, the county acts through its agents and the county is charged with knowledge of all the county’s agents acting within the scope of their authority. See New Props, Inc v Geo D Newpower, Jr, Inc, 282 Mich App 120, 134, 139; 762 NW2d 178 (2009). Specifically, plaintiffs contend that the evidence showed that Commissioner Elliott, who was corporate counsel at the time of the entry of the 2008 injunction, and whose signature appears on the injunction in the circuit court file, had knowledge of the injunction that should have been imputed to the county. Plaintiffs’ argument hinges on their contention that Commissioner Elliott’s testimony that he did not recall the injunctive nature of the order when he voted in favor of the new structure in August of 2013 was not credible. Because Elliott’s testimony was not credible, it would not support a finding of reasonable doubt whether the county had actual notice of the injunction. Instead, plaintiffs argue that Elliott’s admissions and the other evidence established beyond any reasonable doubt that Elliott had knowledge, imputed to the county, of the entry of the injunction in November 2008. Thus, according to plaintiffs, the circuit court erred by finding the county not guilty of criminal contempt.
This Court reviews for an abuse of discretion a trial court’s decision on a motion to hold a party in contempt. DeGeorge v Warheit, 276 Mich App 587, 591; 741 NW2d 384 (2007). “The abuse of discretion standard recognizes that there will be circumstances where *169 there is no single correct outcome and which require us to defer to the trial court’s judgment; reversal is warranted only when the trial court’s decision is outside the range of principled outcomes.” Porter v Porter, 285 Mich App 450, 455; 776 NW2d 377 (2009). The trial court’s findings of fact in a contempt proceeding are reviewed for clear error and will be affirmed on appeal when supported by competent evidence. In re Contempt of Henry, 282 Mich App 656, 668; 765 NW2d 44 (2009). Clear error occurs only when the appellate court is left with the definite and firm conviction that a mistake was made. Id. at 669. In reviewing the trial court’s findings, this Court will not “weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings.” In re Kabanuk, 295 Mich App 252, 256; 813 NW2d 348 (2012).
In a criminal contempt proceeding, “[a] party charged with criminal contempt is presumed innocent . . . and the contempt must be proven beyond a reasonable doubt.” Porter, 285 Mich App at 456. In this case, the circuit court heard the testimony of all the witnesses, found them credible, and weighed all the evidence. The circuit court determined that plaintiffs had not proved beyond a reasonable doubt that the county’s violation of the 2008 injunction was a willful violation of a known legal duty. For those reasons, the circuit court concluded that plaintiffs had not proved beyond a reasonable doubt that the county was guilty of criminal contempt. Plaintiffs’ only claim on appeal is that the trial court erred by favorably assessing the credibility of Commissioner Elliott. Because this Court will not second-guess the trial court’s credibility determinations, plaintiffs’ appeal must fail. In re Kabanuk, 295 Mich App at 256; In re Contempt of Henry, 282 Mich App at 668. The circuit court did not abuse its *170 discretion by finding the county not guilty of criminal contempt. Porter, 285 Mich App at 454-455; DeGeorge, 276 Mich App at 591.
IV. CONCLUSION
I would affirm the circuit court in both cases on all issues. Specifically, I conclude that the circuit court correctly ruled that the structure at issue is a “county building” as that term is used in MCL 46.11(b), and also that the county has the authority to “erect” the structure by determining it is “necessary,” MCL 46.11(d). Further, the circuit court correctly ruled that the adjacent shooting range is ancillary and indispensable to the normal use of the building, thus giving the county use of the building and the adjacent shooting range priority over township ordinances. Herman, 481 Mich at 362 n 13, 368-369.
With respect to the other issues raised in Docket No. 325226,1 conclude that the circuit court did not abuse its discretion by granting defendants partial equitable relief from the 2008 injunction. Furthermore, the circuit court did not err by denying plaintiffs an award of attorney fees under MCL 600.1721. Finally, the circuit court did not abuse its discretion by finding the county not guilty of criminal contempt. I would affirm the circuit court in all respects.

 MCL 46.11 provides:
A county board of commissioners, at a lawfully held meeting, may do 1 or more of the following:
* * *
(b) Determine the site of, remove, or designate a new site for a county building. The exercise of the authority granted by this subdivision is subject to any requirement of law that the building be located at the county seat.
[[Image here]]
(d) Erect the necessary buildings for jails, clerks’ offices, and other county buildings, and prescribe the time and manner of erecting them.

 Herman v Berrien Co, 275 Mich App 382; 739 NW2d 635 (2007), rev’d 481 Mich 352 (2008).

 See Michigan. Commission on Law Enforcement Standards Act, 1965 PA 203; MCL 28.602 et seq.; see also State of Michigan, Michigan Commission on Law Enforcement Standards <http:// www.michigan.gov/mcoles> (accessed September 2, 2016) [https:// perma.cc/3XY9-M8M6].

 Coloma Charter Twp v Berrien Co, unpublished order of the Court of Appeals, entered February 13, 2015 (Docket Nos. 325226 and 325335).

 Local zoning is now authorized by the Michigan Zoning Enabling Act, MCL 125.3101 et seq., which repealed the Township Zoning Act. See MCL 125.3702(1)(c).

 This conclusion is supported by the township’s own zoning ordinance that defines “building” as a “structure,” which in turn is defined in part as “[a]nything constructed or erected with a fixed location on the ground, or attached to something having a fixed location on the ground.”

 “Boards of supervisors shall have legislative, administrative and such other powers and duties as provided by law.” Const 1963, art 7, § 8. Even assuming the county’s actions were administrative, because no hearing was involved, judicial review would be limited to whether the action was “authorized by law[.]” Const 1963, art 6, § 28.

 It should be noted that the statute does not list “courthouses.’